CASE 92.—ACTION BY THOMAS VEACH'S ADMINISTRATOR AGAINST THE LOUISVILLE & NASHVILLE RAILROAD COMPANY FOR NEGLIGENT DEATH.

# Louisville & N. R. R. Co. v. Veach's Admr.

Appeal from Christian Circuit Court.

THOMAS P. COOK, ·Circuit Judge.

Judgment for plaintiff, defendant appeals — Reversed.

1. Appeal and Error—Review—Verdict—Conclusiveness.—A verdict will not be disturbed, as flagrantly against the weight of evidence, where the testimony of several witnesses on each side conflicts.

2. Railroads—Trains—Lookout—Company's Duty.—A lookout for persons on a track must be kept on the engine when it leads the train; but where a train is backing, with the engine 130 to 150 feet from the front end, towards a narrow street crossing, where the view of persons approaching the track was obstructed, the company was bound to have some one on the cars in such position that he could give warning of their approach.

3. Same—Instructions.—An instruction, in an action against a railway company for a death at a street crossing caused by a backing train, that the company was bound to warn "all" persons appoaching the crossing and to "give all reasonable signals," while not reversible error, is objectionable.

4. Trial—Iustruction Not Supported by Evidence.—In an action against a railway company for killing one on its track, it was ' error to qualify the company's right to a verdict, if defendant was guilty of contributory negligence, by instructing that if the company's employes saw his peril, or by ordinary care could have seen him, in time to have averted the accident, and negligently failed to do so, plaintiff could recover, where there was no evidence to sustain such qualification.

FRED P. CALDWELL and BENJAMIN D. WARFIELD for appellants.

JOE McCARROLL and CHARLES H. BUSH of counsel.

POINTS DISCUSSED AND AUTHORITIES CITED.

1. The verdict of the jury is not sustained by sufficient evidence, is flagrantly against the weight of the evidence, and the court erred to appellant's prejudice in not granting it a new trial on this ground. (L. & N. R. Co. v. McGary's Admr., 104 Ky., 509; Hurt v. L. & N. R. Co., 116 Ky., 545; L. & N. R. Co. v. Carter, 23 Ky. Law Rep., 2020; L. & E. Mail Line v. Gilliland, 24 Ky. Law Rep., 2081; L. & N. R. Co. v. Hall, 115 Ky., 567; Strother v. Jones, 20 Ky. Law Rep., 1369.)

2. The court erred in instructing the jury that unless appellant placed some one on the leading car, in a position to give warning of its approach to the crossing, the plaintiff could recover, all other questions aside.

3. Instruction No. 1 requiring a lookout on the leading car was erroneous, for the further reason that it was not shown that this crossing was more dangerous than any ordinary city crossing. (L. & N. R. Co. v. Cummins' Admr., 111 Ky., 330, 340; Hutcherson v. L. & N. R. Co., 21 Ky. Law Rep., 733.)

4. Although a train may be negligently operated over a highway crossing, a traveler who negligently places himself on the crossing can not recover for injuries received thereat, for the injury is then due to the concurrent negligence of both parties.

5. Instruction No. 1 is erroneous in requiring appellant to have a person on the leading car to warn "all persons approaching" said crossing. Appellant was required to give warnings to only such persons as were about to use the crossing. (L. & N. R. Co. v. Smith, 107 Ky., 178;. 2 Thompson's Commentaries, 2485; N., N. & M. V. R. Co. v. Howard, 14 Ky. Law Rep., 476; N. Y., etc., R. Co. v. Kistler, 64 N. E. p. 134; Gahagan v. B. & M. R. Co., 55 L. R. A. 426; L. & N. R. Co. v. Redmon's Admx., 122 Ky. pp. 396, 397, and cases cited.)

6. Instruction No. 1 is erroneous in requiring appellant to have a person on the leading car to "give all reasonable signals" of the approach of the cars to the crossing. Appellant was required to give only such signals as were reasonably sufficient to warn a person approaching and about to use the crossing of the approach of the train. (Paducah & M. R. Co. v. Hoehl, 12 Bush, 41; L. & N. R. Co. v. Cooper, 23 Ky. Law Rep., 1658; 65 S. W., 795; L., C. & L. Ry. Co. v. Goetz's Admr., 79 Ky. 442;

Eskridge's Exors. v. C., N. O. & T. P. Ry. Co., 89 Ky., 367; and the testimony is overwhelming that such signals were given.

7. Instruction No. 2 is erroneous in not requiring the jury to be governed by the evidence in arriving at the compensatory damages awardable.

8. The court erred in qualifying Instruction No. 3. (L. & N. R. Co. v. McCombs, 21 Ky. Law Rep., 1238; L. & N. R. Co. v. Molloy's Admr., 122 Ky., 231.)

HANBERRY & FOWLER for appellee.

W. P. WINFREE & SIN of counsel.

1. The trial court did not err in overruling appellant's motion for a peremptory instruction to the jury to find for it.

(a) The case of Hummer's Ext'x v. L. & N. R. R. Co., 108 S. W. 885, which is relied upon by appellant in support of its motion for peremptory instructions, is not applicable to the case at bar.

(b) Contributory negligence will not be presumed. It must be proven and the burden of proving it is on the appellant. (Cahill v. Cin. etc. Ry. Co., 92 Ky., 345; L. & N. R. R. Co. v. Luacs' Adm'r, 96 S. W., 309.)

(c) The failure of a traveler to stop, look or listen, to ascertain whether a train is approaching, is not of itself proof of contributory negligence sufficient to prevent a recovery. (L. & N. R. R. Co. v. Lucas' Adm'r, 98 S. W. 308; L. & N. R. R. Co. v. McNary's Adm'r, 108 S. W., 898.)

2. The verdict is sustained by sufficient evidence and is in keeping with the weight of the evidence.

(a) There is sufficient evidence to sustain the verdict in this case even if all the evidence offered by appellee, showing that appellant's servants failed to give the usual and customary signals, was of a negative character (which appellee denies. (L. & N. R. Co. v. Molloy's Adm'x, 107 S. W., 217.)

(b) In the case at bar defendant's position of peril was not occasioned by his own negligence, therefore he had the right to make a choice as to the means to be used to avoid the peril, and the fact that he made an unwise choice will not make him guilty of contributory negligence. (L. & N. R. R. Co. v. Molloy's Adm'x, 107 S. W., 217.)

3. The language of instruction No. 1 can not be construed to mean that appellee could recover unless appellant had some one on the leading car to keep a lookout.

4. Under the facts and circumstances proven in this case the

law made it the duty of appellant to have some one on the moving cars in such a position that he could give warning on their approach.  (Shelby's Adm'r v. Cincinnati, etc. R. Co., 85 Ky., 225; L. & N. R. R. Co. v. McNary's Adm'r, 108 S. W., 898.)

5. A reversal can not be had where the party complaining asked for an instruction of the same import as the instruction complained of.  (L. & N. R. R. Co. v. Penrod's Adm'r, 66 S. W., 1013.)

6. Instruction No. 1 correctly authorized the jury to find for plaintiff if defendant failed to place some one on said moving cars in such a position as to give reasonable warning.  (L. & N. R. R. Co. v. Molloy's Adm'r, 91 S. W., 685.)

7. Instructions taken together as a whole, properly instructs the jury as to measure of damages.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

On the 24th day of September, 1907, Thomas Veach was run over and killed by one of appellant's trains in Hopkinsville, Ky. This action was instituted by his administrator to recover damages on account of his death. The trial resulted in a verdict for appellee in the sum of $5,000. Appellant seeks a reversal on the following grounds: First, the verdict is flagrantly against the evidence; second, the court erred in giving and refusing instructions.

The deceased, Thomas Veach, was at the time of his death a truck gardener. His farm was situated on the east side of the city of Hopkinsville. On the day of his death the deceased drove his market wagon into the city for the purpose of selling and delivering vegetables to his customers. Having disposed of his stock, he started toward home. He was struck by appellant's train at a point where its tracks cross Eleventh street. Appellant's tracks run almost due north and south through the middle or center of the city of Hopkinsville. Eleventh street runs almost due east and west, crossing the main track and

switches of appellant at right angles. The space immediately west of the railroad tracks, between Tenth and Eleventh streets, is occupied by the Trice Warehouse, and the space immediately west of the track, between Eleventh and Twelfth streets, is occupied by the Ellis cold storage and the Ellis ice plant; the cold storage being situated immediately south of Eleventh street and west of the railroad track. The Trice warehouse is a one-story and two-story brick structure, the latter part of which is next to the railroad track. On the east side of this warehouse there is a platform, covered by a shed, which extends out to within 4½ feet of the west rail of appellant's side track, and to within 17 feet of the west rail of the main track. The warehouse itself extends to within 23 feet of appellant's main track, and to within 10 feet of its side track. On the south side of Eleventh street and on the west side of the railroad the Ellis cold storage extends to within 10 or 12 feet of the west rail of appellant's side track, and to within 23 feet of its main track. Eleventh street is 35 feet wide, and near the place of the accident is crossed by one of appellant's main tracks and two of its side tracks. At the time of the accident, which occurred at 11 o'clock in the morning, appellant's train consisted of five cars and the engine. The cut of cars was pushed by the engine from the north; the engine being behind all the cars.

Will Harris, a witness for the plaintiff below, testified that at the time of the accident he was unloading a coal car for the Ellis Ice Company. This car was standing on the west or Ellis siding, south of Eleventh street crossing. He was in plain view of the train when it was being backed south and as it approached Eleventh street crossing; saw it when

and before it collided with decedent.   There was no one on or about the cars, which were being pushed south.   After the collision he saw Mr. Cotton Grau come running on the ground to decedent from the direction of the engine; saw another brakeman come, running on the ground from the engine also.   About that time he saw Charlie Jackson, the other brakeman, running up to the place of the accident and pull Veach out.   At the time of the accident the train was "almost flying."   "They were just coming down the road lickety split."   There were no signals given, either by ringing the bell or blowing the whistle.

Clem Wright, another witness for plaintiff below, testified that he saw the accident, and saw the train before it struck deceased.   At the time it struck deceased it was moving something like 20 to 25 miles an hour.   He was in plain view of the train, and saw no one on top or side of the cars before it struck Veach.   After the accident he saw a brakeman come down from towards the engine.   If any signals were given, he did not hear them.

Jesse Peacher, another witness for plaintiff below, testified that he saw decedent driving towards the track when only 40 feet away, and he was driving in a walk.   Witness was driving behind decedent, and as the latter got on the crossing some one hal
looed, at which time he saw the car strike decedent. When he approached the crossing he heard no signals; was within 30 feet of decedent when he was struck, and thought the train was going fast.

Bob Buckner, another witness for plaintiff below, testified that at the time of the accident he was at Tenth street crossing.   The train was going pretty fast, and he did not hear any signals.   The bell was not ringing.

W. H. Jenkins, another witness for plaintiff below, testified that at the time of the accident he was standing on the platform near the passenger depot. The train of cars was being pushed south with the engine in the rear at a rapid rate of speed for a yard engine. The rate was 15 miles an hour when it passed him, between Ninth and Tenth street and immediately before it struck decedent. He had a clear view of the train, and there was no one in sight on the train.

There was also proof to the effect that the decedent was born on August 29, 1843, and had a life expectancy of 12.43 years; that he was an industrious, hardworking man, and made from $500 to $700 per year.

For the defendant below the testimony was as follows:

S. M. Fleming, the yard engineer, testified that he was on the engine which was backing the cars that struck the decedent. His purpose was to place the cars about four lengths further back into the switch south of Eleventh street. When he saw Veach driving on the track the engine was running 4 to 6 miles an hour. The leading car was about a car length and a half from the crossing when he first saw Veach. Was keeping a lookout, and when he saw Veach he was about 20 feet from the track and his horses were trotting. He immediately reversed the engine and put on the air brakes; did all that he could to stop the train. Two men of the crew, Grau and Jackson, were on the leading car—Grau on top of the car and Jackson on the side ladder of the car—and they commenced hallooing back to him; but he had already seen Veach and was doing everything in his power to stop the train. The bell was ringing automatically. The bell was started ringing when the engine was first put in motion, and when witness came back to

the engine after the accident it was still ringing. He had stopped the train at Ninth street which is only 400 feet from Eleventh street, and had only about 130 feet further to go. Veach was lying under the first truck of the second car.

John E. Millen testified that he was yardmaster of Hopkinsville at the time of the accident; that he was riding on the middle car of the cut which struck Veach; that Jackson was on the head car, and Grau was on top of the same car at the end, with his feet hanging down; were going 4 miles an hour, and bell on the engine was ringing automatically; saw Veach through the corner of the porch as his horses came from behind the warehouse. Veach was then about a car length and a half away. He (Millen) dropped off, as he was riding on the side of the car. He and Jackson signaled the engineer. When he first saw Veach, the latter's horses were trotting faster than the train which struck him.

Claude Grau testified that he was a member of the crew handling the cut of cars. At the time of the accident he was sitting on the running board on top of the first car and at the front end of it. The train was going at the rate of 4 miles an hour. When he saw Veach come in sight on Eleventh street crossing, he was only 35 or 40 feet from him. He hallooed at him and tried to stop him. Jackson also jumped off and ran across, and gave the signal to stop the train, and tried to stop Veach. The latter was going at a pretty good gait. The bell on the engine was ringing automatically.

Charles W. Wilkins testified that he was the fireman on the engine in question. The bell was ringing on the engine. Did not see Veach, but saw the horses. As soon as he saw the horses, the engine went into

emergency and was reversed as quickly as possible. The engine extended out on the sides further than the car, so that the engineer and fireman could look down the track on each side and see "plumb outside of the cars and down the track."

Charles Jackson testified that he was a switchman and was riding on the side of the leading car. When he was within 15 or 20 feet of Eleventh street he saw Veach. He hallooed at Veach, who jerked his horses when he was right in the middle of the track. He jumped off, as he though he might beat the train to the crossing. Grau also hallooed at Veach, as Grau was sitting on the head end with his feet hanging over. (He (witness) signaled the engineer as he jumped off; was within about a car length of Veach when he first saw him, and Veach was within about 20 feet of the track. The bell on the engine was ringing automatically. Veach was driving at a pretty good trot. He was found lying under the first truck of the second car.

The only real points at issue in the case are the rate of speed, the question whether or not there was any one on appellant's cars to give warning of its approach to Eleventh street crossing, and the further question whether or not any signals were being given. At least two witnesses for plaintiff testified that the rate of speed was from 15 to 20 miles per hour, that there was no one upon any of the cars, and that no signals of any kind were given. On the contrary, the employes of appellant—three or four in number—all testified that the rate of speed was from four to six miles an hour, that the automatic bell was ringing, and that there were from two to three men in position on the cars to give warning, and who actually did give warning, to deceased. Where there are two

or three witnesses on each side whose testimony is diametrically opposed, we are unable to say that the verdict of the jury, who were present and heard all the witnesses, is flagrantly against the weight of the evidence.

The court instructed the jury as follows:

"No. 1. The court instructs the jury that it was the duty of defendant and its employes, in charge of the engine and train of cars that struck and killed Thomas Veach, to handle same in a reasonably safe and prudent manner in and through the city of Hopkinsville. and that it was the duty of defendant to place some one on the moving cars in such position that he could give warning of its approach, and to give all reasonable signals of the approach of such cars at the public crossings in said city, by the ringing of the engine bell or by the whistle, to warn all persons approaching said crossing; and if the jury should believe from the evidence that the defendant and employes, in backing said train of cars, failed to place some one on said moving cars in such position as to give reasonable warning of the approach of said train, and to keep a lookout and to give warning of its approach, or failed to discharge the duty imposed by the reasonably safe and prudent handling of said train, and by the ringing of the bell or sounding of the whistle to warn persons approaching Eleventh street crossing in the city of Hopkinsville, and by reason of such failure plaintiff was struck and killed by defendant's train, then the law is for the plaintiff, and the jury should so find, not exceeding the amount claimed in the petition of $25,000.

"No. 2. The court instructs the jury that, if they shall find for the plaintiff, the measure of recovery is limited to such fair and reasonable sum of money as

will fairly and reasonably compensate his estate for the loss of his power to earn money, with due regard to his age and expectancy of life, as shown by the evidence.

"No. 3. The court instructs the jury that it was the duty of the deceased, Thomas Veach, at the time and place of his injury and death to use all ordinary care and to take all reasonable precautions for his own safety, and to prevent injury to his own person, before crossing or attempting to cross defendant's tracks and after entering upon same; and if the jury believe from the evidence that he negligently or without ordinary care failed to ascertain whether said train was approaching said Eleventh street crossing, or entered upon said tracks without exercising ordinary care for his own safety, or if they believe from the evidence that after he had entered upon said tracks he failed to exercise ordinary care to get out of danger, after discovering said train (if he did discover it), and that, but for such failure on his part to use ordinary care for his own safety, his injury and death would not have occurred, the law is for the defendant, and they must find for the defendant, unless they shall further believe from the evidence that the defendant's agents and employes saw his peril, or by the use of ordinary care could have seen his peril, in time to avert his injury, and negligently failed to do so, in which case they may find for the plaintiff, as instructed in instruction No. 1.

"No. 4. The court further instructs the jury that ordinary care, as used in these instructions, means such care as ordinarily prudent persons would exercise under circumstances similar to those proven in this case. Negligence is the failure to exercise ordinary care.

"No. 5. Nine of the jurors may return a verdict in this case; but, if all do not agree, those agreeing must all sign the verdict."

Instruction 1 is vigorously attacked upon the ground that it places too great a responsibility upon the railroad company. Counsel contend that the duty of placing some one on the cars to control their movements applies to those cases where the cars can be controlled only by those who are on them; that in this case the cars were controlled absolutely by the engineer; that the proof shows that the engineer saw the decedent just as soon as those who it is claimed were on the cars saw him; furthermore, that there was no evidence that the crossing in question was so dangerous as to require any extra precaution on the part of the railroad company. It must be admitted that the ordinary place in which the lookout must be kept is in the engine. That applies, however, to cases where the engine is leading the train, and those in the engine are naturally placed in a proper position to keep a lookout. But where the engine is in the rear of the train, and from 130 to 150 feet away from the front end of the train, it cannot be said that the engine is the proper place in which to keep a lookout. While those keeping a lookout on the cars might not be able to control the movements of the cars, they would at least be in a position to give warning to persons approaching the track, and to signal to the engineer to stop the train when necessary. If the duty of having additional persons on the cars to keep a lookout should devolve only in those cases where the crossing is shown to be exceptionally dangerous, as claimed by counsel for appellant, then we are of the opinion that the facts of this case bring it within that rule. The narrowness of the street, the number

of tracks that cross it at that point, the location of the buildings. which obstruct the view of those approaching the track, make it a dangerous place. We do not think, therefore, that the court erred in instructing the jury that it was the duty of the defendant to place some one on the cars in such position that he could give warning of their approach.

It is further contended that instruction No. 1 is erroneous in that it requires appellant to have on the cars some person in a position to warn "all" who approach said crossing, and also in using the language. "to give all reasonable signals." While we would not reverse on this account, it is nevertheless true that the instruction is subject to criticism because of the expression complained of. Upon the next trial the court will eliminate the word "all."

Counsel for appellant further contend that the court erred in qualifying instruction No. 3 by the following language: "* * * Unless they shall further believe from the evidence that the defendant's agents and employes saw his peril, or by the use of ordinary care could have seen his peril, in time to avert his injury, and negligently failed to do so, in which case they may find for the plaintiff, as instructed in instruction No. 1." We have carefully examined the testimony in this case, and are of the opinion that there was no testimony to the effect that Veach's peril could have been discovered sooner than it was, or that the accident could have been averted by any action on the part of the train operators. Until Veach emerged from behind the buildings, no one on the train could have seen him. All the testimony shows that he was seen as soon as he emerged and that every effort was then made that could be made to stop the train. There was no evidence upon which

to base the qualification complained of in instruction No. 3, and we are therefore of the opinion that the language employed was misleading and necessarily prejudicial.    Louisville & Nashville R. R. Co. v. Joshlin, 110 S. W. 382, 33 Ky. Law Rep. 513.  On the next trial the language complained of should be omitted from the instruction.

For the reasons given, the judgment is reversed, and cause remanded for proceedings consistent with this opinion.