## Southern Railway Company in Kentucky v. Sanders.

(Decided December 5, 1911.)

### Appeal from Anderson Circuit Court.

1. Railroads—Duty to Licensee on Tracks.—It is the duty of a railroad company when moving an engine and cars upon its tracks, where the presence of persons using the tracks as a matter of right or as licensees must be anticipated, to give warning of the approach of the train, to operate it at a reasonable rate of speed, and to keep a lookout. This care is not only exacted at places where the public have a right to use the right of way and tracks, but is also exacted at points on its road in cities, towns and populous communities where the public generally have been in the habit of using with the knowledge and consent of the company its tracks and right of way.

2. Same—Duty Where Licensees use Tracks, Not Always the Same.— It does not follow from the fact that licensees with the knowledge and consent of the company use its tracks and right of way during certain hours of the day or during the entire day, that they will be used in the same manner during the night or that the company owes in day and night the same degree of care.

3. Same—Distinction Between Duty to Person Using Tracks as a Matter of Right and as Licensees.—There is a distinction between the duty owing by a railroad company at all times during the day and night and under all circumstances at places where travelers have a right to be, as on public crossings, and the duty it owes on its private premises and yards, set apart by it for its own use and business.

4. Same—Duty of Company Varies at Places Where Public Have Not the Right to Be.—When a railroad company permits large numbers of the public to habitually travel its tracks and right of way, it must take care not to injure them; but this undertaking only embraces those periods in which the public is in the habit of using the premises, and does not apply at all times.

5. Same—Person Who is Injured Must Show Company Owed Him Duty.—Where a person claiming the rights of a licensee is injured, he must show that the public was in the habit of using the tracks

at the time he was injured. It is not sufficient to show that the public used this place at other times in the day or night.

6. Same—Trespasser—Duty to.—There is no duty of lookout or warning due to a trespasser. The company is only required to exercise care to save him from injury after his peril is actually discovered.

7. Same—Lookout Duty—Sufficiency of.—When the lookout is required, it means such a lookout as will be effective for the purpose intended and reasonably sufficient to discover the peril of persons on the track, as well as to stop the engine or train as soon as it can be done by the exercise of reasonable care, when warning or notice of the danger is given.

8. Same—Lookout in the Night—Sufficiency of—Backing Engine.— Where an engine is backing in the night, there should either be a light on the end of the tender, or brakeman stationed there with a lantern, or a brakeman with a lantern walking in front of the moving engine. The fact that the engineer may be keeping a lookout is not sufficient.

9. Contributory Negligence.—Where a person who is injured goes upon the track so close to an approaching engine that injury to him could not have been averted by those in charge of the train if a reasonable lookout had been observed, he cannot recover.

10. Intoxicated Person—Rights of, When Injured.—If a person by reason of intoxication fails to exercise such care for his safety as might be ordinarily expected of a sober person of ordinary prudence, and by reason of such failure is injured, he cannot recover.

WILLIS, TODD & BOND for appellant.

EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

On March 5, 1910, the appellee, Sanders, went to Lawrenceburg from Lexington about 6:30 p. m., for the purpose of leaving there for his home on a Danville train that left Lawrenceburg about 10:30 p. m. When he reached Lawrenceburg, he was under the influence of liquor, and while in Lawrenceburg waiting for his train continued drinking, with the result that he became very much intoxicated. About 9 o'clock that evening he went to the depot to wait for his train to come in, and while there, walked across a passing track and a house track situated at the back of the depot, for the purpose as he says of going to a water closet. On his return from the water closet to the depot, a little after 9 o'clock, his foot was caught between the rails at the point of a switch that had been left open for the purpose of permitting an engine and tender to back from the side track on to the

house track, and while his foot was so fastened the tender of the engine ran upon it, injuring it to such an extent that it became necessary to amputate the foot. To recover damages for the injuries thus sustained, he brought this action against the company, and upon a trial before a jury recovered a verdict for a substantial sum.

Upon this appeal by the company, from a judgment entered upon the verdict, the principal contention of counsel for the appellant is that the trial court erred in refusing to sustain a motion for a peremptory instruction made at the conclusion of the evidence for the appellee. It is also insisted that the court erred in the instructions given to the jury.

The water closet to which appellee testified he went and from which he was returning when injured is situated some distance from the depot on property of the company and in what may be called its yards at Lawrenceburg. This water closet had been abandoned by the company and securely closed several months before the accident to appellee, and there is no evidence that at this time it was used by any person. Indeed, there was no reason why it should be used, as the company maintained at the time of the accident and for some years before a well appointed water closet in its depot building. Why appellee should have gone to this abandoned water closet is not apparent, as it is fair to assume that he knew it was not in use, and also knew that the company maintained one in its depot building, because he testifies that he had been about the depot as much as fifty different times before he was injured. It is said, however, that although it may not have been necessary for appellee to go to this water closet, yet he had the right to cross the tracks at the place he was injured, and whatever his purpose was the company owed him the duty of giving warning of the approach of its engine, and keeping a lookout to discover his presence and prevent injury to him. This argument is based upon the theory that the tracks and place at the point where appellee was injured were used by the public generally in going from Court street to Woodford street, and in passing in and about the depot premises. Upon this point the railway company did not introduce any evidence, but witnesses in behalf of appellee testified that there was a great deal of travel by the public across these tracks and in the yards of the company, especially by persons who wanted to take a short cut from one of these streets to the other, and in

going to and from a lumber yard situated in the vicinity.
But, in what we may call the yards, where the house
track and other tracks were located, there was no side-
walk or regular traveled way, nor were any lights main-
tained there at night for the use or benefit of the public.
The evidence does not show that these premises were
used at all by the public after night, and considering
their location, condition and surroundings, there is noth-
ing in the record from which we can reasonably infer
that the public was in the habit of using them at night.
In view of this use of the premises, we will consider later
in the opinion the rights and liabilities of pedestrians
and the railway company at the time of night appellee
was injured.

The testimony of appellee that relates immediately
to the time of the accident is as follows:

"Q. When did you first discover the train approach-
ing, if you did discover one? A. After I got on the
track. Q. How far was it from you? A. Probably 20
or 30 feet; I couldn't say just exactly what distance. Q.
Can you say now to the jury what composed the train
that was approaching you? A. No, sir, I can't say. Q.
Do you know how fast it was approaching? A. I don't
except it would have taken it more than five minutes to
run a mile. Q. Who, if any employe, was on the rear end
of that train? A. No one. Q. Was there any light? A.
No light at all. Q. Was the bell being rung or whistle
sounded? A. No whistle was ever blowed; if it was, I
didn't hear it. Q. Did you have any notice whatever of
the approach of the train before you observed it a few
feet from you? A. No, sir. Q. Then what occurred
when you discovered it? A. When I discovered the ap-
proach of the train, I was going on the track, and I
started on across and I hung my foot in there. Q. In
what? A. In the switch. Q. Between the rails? A.
Yes, sir, between the two rails. Q. What did you do
then? A. When I hung my foot in the track, I began to
holler, and as quick as I fell I tried to pull loose. Q. Try-
ing to get your foot out of the track? A. Certainly. Q.
What else were you doing as you made an effort to extri-
cate yourself? A. Only trying to get loose. Q. Did you
holler? A. Yes, sir, I hollered about twice before the
train struck me. Q. How long after you got your foot
in there before the train struck you? A. In about a
quarter of a minute. Q. How much of the train passed,
if any, over your foot? O. One wheel passed clear over

it, and the other passed in a manner over it. Q. Do you know who was the first person that reached you? A. A man that had a light. Q. Had you seen that light before you fell? A. No, sir. Q. Was that light in front of the approaching train or at the rear? A. No, sir, that light came down from up towards the engine, and came up to me. I was turned with my face toward the engine.''

The evidence of the appellant company is in substance that the house track switch had been opened for the purpose of letting the engine and tender back from its main siding on to the house track to get two cars that were standing on the house track close to the point where it connected with the siding. That the engine, which was in charge of the fireman was running about three miles an hour. That the brakeman who accompanied the engine for the purpose of coupling the tender to the cars had gotten off the engine and was running on the engineer's side of the track with a lantern in his hand a few feet ahead of the tender as the engine backed, at the time and before appellee was injured. That when he discovered appellee, he at once signalled the engineer to stop, which he did almost immediately. The engineer testifies that the engine was backing about three miles an hour. and that the brakeman was running a few feet ahead of the engine, and that when the brakeman gave the stop signal he applied at once the emergency brake and the engine did not go over two feet after the brake was applied. He further testified that an engine and tender running three miles an hour could be stopped in two feet.

That the engine bell was ringing is proved by several witnesses, and not denied by appellee or any other person.

It will be observed that appellee testifies that when he discovered the approach of the engine, which he says was backing at the rate of about twelve miles an hour, he was going on the track, and that in attempting to cross his foot was caught in the switch rail. Aside from the fact that the engine bell was ringing, he knew that the engine was approaching, and only a few feet away when he started across the track. Why he took the foolish and dangerous risk of attempting to cross the track in front of a moving engine that he knew was only a few feet away can not be explained except on the theory that in his intoxicated condition he did not appreciate the danger in which he voluntarily placed himself. Probably if

his foot had not been caught he would have escaped; but there can be little doubt that appellee was extremely reckless in undertaking to cross the track at the time he did. But, however this may be, if he is to be treated as a trespasser, the motion for a peremptory instruction to find for the company should have been sustained because the company only owed him the duty of exercising ordinary care to protect him after his presence on the track was actually discovered and the evidence is conclusive that the trainmen did everything that could have been done to avoid the injury after his peril became known. If, however, appellee is not to be treated as a trespasser, but as a licensee, and the company owed him a lookout duty, there is enough in the record to take the case to the jury on the theory that his peril by the exercise of the required care could have been discovered in time to have prevented the accident.

Taking up now the feature of the case, that appellee should be treated as a trespasser, and consequently the company did not owe him the duty of either warning or lookout, but was only required to exercise ordinary care to prevent injury to him after his peril was actually discovered, let us see how the matter stands. The public did not use the company's premises or tracks at the place where appellee was injured as a matter of right, but merely under a license so to do recognized and consented to by the company. But we have not made any difference, except as will be hereafter pointed out, between the protection that must be accorded to persons using and crossing the tracks as a matter of right, and those using and crossing them as licensees. We have written in a number of cases that it is the duty of a railroad company when moving engines and cars upon tracks where the presence of persons using the tracks as a matter of right or as licensees must be anticipated to give warning of the approach of the train, to operate it at a reasonable rate of speed, and to keep a lookout. This care is not only exacted at places where the public have a right to use the right of way and tracks, as at street crossings and the like, but is also exacted at points on its road in cities, towns and populous communities where the public generally have been in the habit of using with the knowledge and consent of the company its tracks and right of way. L. & N. R. Co. v. Veach, 129 Ky., 775; Shelby v. C., N. O. & T. P. Ry. Co., 85 Ky., 224; Connelly v. C., N. O. & T. P. Ry. Co., 89 Ky., 402; Illinois Central R. Co. v. Fla-

herty, 239 Ky., 147; L. & N. R. Co. v. McNary, 128 Ky., 408; Illinois Central R. Co. v. Murphy, 123 Ky., 787. But, in places where the right of way and tracks of the company are used substantially as the evidence shows they were at Lawrenceburg, the duty of the company is not at all times of the day and night the same. For example, the company might consent to and be charged with notice of the use of its tracks and premises by licensees during certain hours of the day, or during the entire day. But in the night, the tracks and premises at these places might be used seldom or not at all by travelers, and consequently the company would not be under the same high duty to anticipate their presence on the track during these hours as it would be during the day time. It does not follow that because persons who in large numbers habitually use its tracks and right of way during certain hours of the day or during the entire day, are to be treated as licensees, that it will be used in the same manner during the night or that the company owes in the day and night the same degree of care. There is and ought to be a distinction between the duty owing by a railroad company at all times of the day and night and under all circumstances and conditions at places where travelers have the right to be, as on public crossings and streets that are occupied by railroad companies, and the duty it owes on its private premises and yards set apart by it for its own use and business. The facts of this case serve very well to illustrate the difference between the duty of the company at a street crossing and its duty in yards and premises owned and occupied by it. Here the place where appellee was injured was situated between two streets and was the private property of the railroad company. It had been set apart for its use in the transaction of its business and was occupied by its tracks and other buildings and property. It was not crossed by any street or public way, nor was it used for travel by the public, except on foot, but the company by its conduct recognized the right of the public to use these premises, and when a railroad company permits large numbers of the public to habitually travel to and fro upon its tracks and right of way, it must take care not to injure them, as the license to use the premises carries with it the assurance that the licensee will not be harmed by the neglect or carelessness of the licensor. This undertaking, however, on the part of the company only embraces those periods in which the

public is in the habit of using the premises under a license, and does not apply at all times. The general rule is that when persons who have no business with the company come on its private grounds and on places where the general public have no right to go or be, they are trespassers. Brown v. L. & N. R. Co., 97 Ky., 228; L. & N. R. Co. v. Redman, 122 Ky., 385; C. & O. Ry. Co. v. Nipp, 125 Ky., 49; Kentucky Central R. Co. v. Gastineau, 83 Ky., 119; McDermott v. Kentucky Central R. Co., 93 Ky., 413. But when the use by the public of the tracks and private premises of a railroad company becomes frequent and common, the law in its regard for human life and limb puts upon the company the duty of exercising care to prevent injuring the persons thus using its grounds. So that a person may at one time and place be a licensee, and at another time but at the same place be a trespasser—the changed conditions growing out of the different use by the public of the place. It was therefore necessary to entitle appellee to recover that he should bring himself within the rules of law applicable to persons enjoying the protection of licensees by evidence that the public was in the habit of using the premises in which he was at the time he was injured or during the night time. It was not sufficient to show that this place was used by the public in the day time. This distinction as to the varying duty of the company, where its duty is not regulated by statute, we have pointed out in a number of decisions. We have not, of course, undertaken to lessen statutory duties, but on the contrary, where the public safety demanded a higher degree of care than the statute required, we have imposed it. C. N. O. & T. P. Ry. Co. v. Champ, 31 Ky. L. R., 1054.; L. & N. R. Co. v. Cummins, 23 Ky. L. R., 681; Southern Railway in Kentucky v. Winchester, 127 Ky., 144. In short, the settled rule in the absence of statutory regulations is to require railroad companies in the movement and operation of their trains at places where the presence of persons on the track is at times to be anticipated to exercise such care for the protection of the public as the conditions demand. This varying measure of duty was expressed in L. & N. R. Co. v. Bays, 142 Ky., 400. In that case Bays got off the train at a small station called Four Mile, about 11 o'clock in the night. Soon after this he was run over and killed by the tender of a backing engine. In a suit brought by his administrator to recover damages for his death, the evidence for the plaintiff showed that there

was no light on the rear of the engine as it backed, and no signal was given of its approach. There was evidence as in this case, that the public generally had been in the habit of using the track at the place where Bays was killed during ordinary business hours, and for a reasonable time thereafter. The contention of the plaintiff was that because of this use the company in the movement of its train owed to Bays the duty of warning and lookout; but we said:

"There is no proof of the use of the track by pedestrians at a late hour of the night to any considerable extent. * * * * * We think the evidence well warrants the conclusion that about train time there was such a use of the tracks about the station as that a lookout duty was then required as to persons coming to the train or otherwise lawfully using the station grounds. But, here, the passenger train had passed two hours before, and there was no train to stop at this station for a number of hours. * * * * At this late hour of the night, it cannot be said that the railroad company was under a duty to anticipate the presence of persons on its tracks, and under the evidence the court should have instructed the jury peremptorily to find for the defendant."

In Hoback v. Louisville, H. & St. L. Railway Company, 30 Ky. Law Rep., 476, in a case like this, it is said:

"Even though appellee knew that its track at the place in question was used by the people in that locality and had been so used in passing from their homes to the neighboring villages, yet this use so far as the proof shows had been confined principally to Sundays, and at reasonable hours in the day time; and appellee would certainly have no right to anticipate nor be required to be on the lookout for trespassers upon its track at the dead hour of midnight."

Under the evidence, we are well satisfied that the company was under no duty to anticipate the presence of persons on its track at the time and place appellee was injured. This being so, he occupied the attitude of a trespasser, and, as the company did not owe him either the duty of lookout or warning, but was only required to exercise ordinary care to avert the injury to him after his peril was actually discovered, the motion for a peremptory instruction should have been sustained.

If there is another trial, and evidence is introduced in behalf of appellee to show that large numbers of persons were habitually accustomed to using during the night the

tracks and premises of the appellant company at the place where appellee was injured, the case should be permitted to go to the jury, as such use imposed upon the company the duty under the circumstances of this case of operating its train at a reasonable rate of speed, keeping a lookout and giving warning of the movement of the engine.    When the lookout duty is required it means such a lookout as will be effective for the purpose intended, and reasonably sufficient to discover the peril of persons on the track, as well as to stop the train or engine as soon as it can be done by the exercise of reasonable care when warning or notice of the danger is given.    To meet this duty where it is required as to a backing engine in the night time there should be either a light on the end of the tender or a brakeman stationed there with a lantern, or a brakeman, with a lantern, walking in front of the moving engine.    The fact that the engineer may be keeping a lookout is not sufficient when the way is not lighted so that he can see objects on the track.    But, unless there is the quantity of evidence indicated upon the use of the tracks and premises by the public during the night or about the time appellee was injured the court should direct a verdict for the railway company.    If, upon another trial, the case is submitted to the jury, the court, in place of Instruction No. 2, should instruct them that if they believe from the evidence that the tracks and premises of the railway company were habitually used by the public during the night or at or near the time in the night that appellee was injured, and the presence of persons on the track at that time and place was reasonably to be expected, then it was the duty of those in charge of the engine to give reasonable warning of its approach by blowing the whistle or ringing the bell, and to keep a reasonable lookout in front of the engine and tender as it moved.    It was incumbent on the plaintiff to exercise reasonable care to look out for approaching trains, and keep out of the way.    And, if reasonable warning of the approach of the engine and tender was not given, or a reasonable lookout was not kept, and by reason of this plaintiff's foot was run upon by said engine or tender while he was exercising reasonable care to discover and keep out of the way of the engine, they should find for the plaintiff.

In lieu of Instruction B, the court should instruct the jury that if the plaintiff after receiving or having warning or notice of the approaching engine, went upon the

track, so close to it that the injury to him could not have been averted by those in charge of the engine if a reasonably sufficient lookout had been observed, they should find for the defendant.

In addition to the instructions given, the jury should also be instructed that if the plaintiff by reason of intoxication at the time of his injury failed to exercise such care for his safety as might be ordinarily expected of a sober person of ordinary prudence situated as he was, and by reason of such failure was injured, he cannot recover. L. & N. R. Co. v. Gardner, 140 Ky., 772; L. & N. R. Co. v. Cummins, 111 Ky., 333; Hummer v. L. & N. R. Co., 32 Ky. L. R., 1315.

Wherefore the judgment is reversed with directions for a new trial in conformity with this opinion.