## Southern Railway Company in Kentucky v. Jones.

(Decided November 1, 1916.)

### Appeal from Anderson Circuit Court.

1. Railroads—Operation—Duty to Persons on Track.—The habitual use by the public as a thoroughfare, with the knowledge and acquiescence of the railroad company, of its tracks and right of way, in cities, towns or populous communities, imposes upon it the duty of operating its trains at a reasonable rate of speed, keeping a lookout and giving proper warning of the trains' movements.

2. Railroads—Operation—Action for Injuries—Presumption as to Signboards.—Where the evidence is conflicting as to when signboards warning persons not to trespass upon the tracks and right of way of a railroad company were put up, and that of the railroad company at most went no farther than to indicate that they were put up but a day or two before the accident resulting in plaintiff's injuries occurred, there can be no presumption that the signboards had been maintained for such a length of time that pedestrians, accustomed to going upon the tracks or right of way were thereby warned of the purpose of the company to stop their use of same.

3. Railroads—Injury to Person on Tracks—Action—Questions for Jury.—Plaintiff's evidence conduced to prove that signboards warning persons against trespassing on the railroad company's tracks and right of way at the place of the accident in question, were not put up until after the accident, and that if they were up plaintiff did not see them when he went upon the tracks; the defendant railroad company's evidence conduced to prove that the signboards were put up several days before the accident and in such conspicuous places that anyone going upon the tracks must have seen one of them. Held: That the question as to whether the signboards were, in fact, put up before the accident, and whether the plaintiff saw them before receiving his injuries, were questions for the decision of the jury.

4. Railroads—Injury to Person on Tracks—Action—Instructions.— There being some evidence that plaintiff was intoxicated at the time of receiving his injuries and none that the railroad company's servants in charge of the train by which he was injured had any knowledge thereof, the jury were properly instructed that he was required to exercise such care for his own safety as might reasonably be expected of a sober person of ordinary prudence situated as he was; and that no greater degree of care was required of the company's servants, under the circumstances, than would have been required of them had he been a sober person.

5. Trial—Instructions to Jury—Form and Requisites.—It was prejudicial error for the court to give an instruction which permitted the jury to make a finding upon their belief of a certain state of facts predicated in the instruction, without telling them that such belief must be arrived at from the evidence.

6. Railroads—Operation—Injury to Person on Tracks—Action—Instructions.—Although on the trial of this action it appeared from the defendant railroad company's evidence that at the time plaintiff received his injuries it had up signboards warning pedestrians of the danger of going upon its tracks and not to do so; as it was not made to appear from the evidence that such signboards had been up for such length of time as to afford opportunity to those in the habit of using the tracks to know of their presence, the jury should not have been instructed that they would be authorized to find plaintiff a trespasser because of his being on the tracks at the time of the accident, unless it was further made to appear from the evidence that he in fact saw the signboards or one of them before the accident, under such circumstances as would have enabled a person of ordinary intelligence and prudence to understand their warning.

7. Evidence—Relevancy—Witness's Answer to Irrelevant Question Conclusive.—If a question asked a witness relates to a collateral fact, his answer is conclusive. He cannot be examined as to an irrelevant fact, merely for the purpose of laying a foundation for contradicting him by other evidence and discrediting his testimony, in case he denies the fact; or for the purpose of getting before the jury contradictory evidence which is mere hearsay.

WILLIS, TODD & BOND and HUMPHREY, MIDDLETON &. HUMPHREY for appellant.

FRANK L. RIPY and EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

November 12, 1914, the appellee, Charley Jones, while crossing the tracks of the appellant, Southern Railway Company in Kentucky, in its railroad yards at Lawrenceburg, Kentucky, was knocked down by a box-car set in motion by an engine and other cars, as he got in front

of it, two of his ribs were fractured and his left arm caught under a wheel and cut off near the wrist; the bones of his arm being so mangled that its amputation below the elbow was rendered necessary. Following the accident this action was instituted by appellee in the Anderson circuit court to recover of appellant damages for his injuries. The latter's answer denied any negligence upon its part, alleged that appellee at the time of receiving his injuries was a trespasser and that his injuries were caused by his own negligence. These grounds of defense were controverted by appellee's reply. The trial resulted in a verdict of $5,425.00 in his favor, and from the judgment entered thereon the railway company has appealed.

Except the appellee himself there was no eye-witness to the accident. Appellee is a resident of Mount Eden, in Spencer county, but was in Lawrenceburg on the morning of November 12, 1914, to attend to some business which he had with a Mr. Hawkins, for whom he had made a purchase of some turkeys. Hawkins was a dealer in turkeys and owned certain pens, where they were confined before shipment, located on appellant's railway above a street known as Bush avenue. Upon reaching Lawrenceburg in the morning appellee learned that Hawkins was out of the city but would return about six o'clock p. m. of that day. At or just before that hour he went to the turkey pens, walking up the railroad to reach them. When he got to the turkey pens, however, he found Hawkins was not there. He thereupon immediately started back towards Court street, still travelling on the railroad, up the beaten path between the tracks to a point opposite the building of the Lawrenceburg Supply Company, which is situated in the vicinity of the railway's premises between Court street and Bush avenue. He then attempted to cross one of the railroad tracks five or six feet in front of some stationary box-cars, and while upon the track the cars were moved backwards with such suddenness and force as to strike him before he could get out of the way, knock him down on the track and thereby cause the injuries already mentioned. According to his testimony there was no light upon the rear car or lookout maintained by anyone therefrom, nor was there any signal from the engine indicating that the cars would be moved. The testimony of appellee as to the facts thus far stated does not appear

to be contradicted by any of the evidence introducd in appellant's behalf.

It appears from the evidence of appellee that appellant's depot and railroad yard are within the corporate limits of the city of Lawrenceburg; that its several tracks, including the place of the accident, lie between Court street and Bush avenue, both of which cross the railroad tracks; and that the tracks both at the place of the accident and other points between the streets mentioned were habitually used by pedestrians generally, both day and night, and had been so used for a great number of years, with the knowledge and acquiescence of the railway company.

On the other hand, while the evidence introduced in appellant's behalf shows some use of the tracks, it tended to prove that it was not so habitual or constant as was shown by appellee's evidence and was not acquiesced in by appellant. In addition, some of the evidence introduced in appellant's behalf conduced to prove that prior to and but a day or two before the accident, it had caused to be put up at various points between Court street and Bush avenue, as well as contiguous thereto, on posts, signs warning the public from going upon or using its railroad tracks; that one of these signs was immediately opposite the place of the accident and all of them were in such conspicuous places as made them easily seen and read by any and all persons upon or near the tracks.

The first ground urged by appellant's counsel for a reversal of the judgment is that the trial court erred in refusing the peremptory instruction directing a verdict in its behalf, asked by it at the conclusion of appellee's evidence and again at the close of all the evidence. This instruction was, of course, asked upon the theory that the appellee, upon the facts presented, should be treated as a trespasser and, such being his status, those in charge of the switching of the cars by which he was injured owed him no duty to avoid injuring him, until after his peril was discovered; and that by the testimony of the switching crew, which was uncontradicted by that of appellee, his peril was never discovered before his injuries were received. We are clearly of opinion that the refusal of the peremptory instruction was not error. In view of the evidence as to the habitual, constant and long use by the public of appellant's railroad yard and tracks

between Court street and Bush avenue, the jury should have been allowed to determine whether appellant's servants in charge of the switching of the cars by which appellee was injured exercised ordinary care, in conducting the switching operations, to prevent his injuries.

In a long line of cases we have held that such use of a railroad company's tracks as was here shown, imposes upon it the duty of operating its trains at a reasonable rate of speed, keeping a lookout and giving warning of the trains' movements, and that this care is not only required at places where the public have a right to use the right of way and tracks, as at street crossings and the like, but is also to be applied at points on its road in cities, towns and populous communities, where the public generally have been in the habit of using, with the knowledge and consent of the company, its tracks and right of way.

In Sou. Ry. Co. in Ky. v. Sanders, 145 Ky. 679, it is declared:

"When the lookout duty is required it means such a lookout as will be effective for the purpose intended, and reasonably sufficient to discover the peril of persons on the track, as well as to stop the train or engine as soon as it can be done by the exercise of reasonable care when warning or notice of the danger is given. To meet this duty where it is required as to a backing engine in the night time, there should be either a light on the end of the tender or a brakeman stationed there with a lantern, or a brakeman, with a lantern, walking in front of the moving engine. The fact that the engineer may be keeping a lookout is not sufficient when the way is not lighted so that he can see objects on the track." L. & N. R. R. Co. v. Veach, 129 Ky. 775; L. & N. R. R. Co. v. McNary, 128 Ky. 408; I. C. R. Co. v. Flaherty, 139 Ky. 147; L. C. R. Co. v. Murphy, 123 Ky. 787; Shelby v. C., N. O. & T. P. R. Co., 85 Ky. 224; Connelly v. C., N. O. & T. P. R. Co., 89 Ky. 402; C. & O. Ry. Co. v. Booth, 149 Ky. 245; L. & N. R. Co. v. Trisler, 140 Ky. 447; I. C. R. Co. v. Outland's Adm., 160 Ky. 721; Haley's Admr. v. C. & O. Ry. Co., 157 Ky. 217; C. & O. Ry. Co. v. Berry's Admr., 164 Ky. 289; C. & O. Ry. Co. v. Warnock's Admr., 150 Ky. 150.

In view of the abundant evidence as to the long and constant use by the public of appellant's tracks at the place of the accident, we would be unauthorized to say that the mere presence on or near the grounds of sign-

boards forbidding the use of the premises by the public, even though they had been maintained for a greater time than appellant's evidence tended to prove they were here maintained, would have justified the giving of the peremptory instruction asked by it. In point of fact, its evidence in this case is indefinite as to the time the signs were put up. At most, it goes no farther than to indicate that they were put up but a day or two before appellee's injuries were sustained, and there was as much or more evidence in appellee's behalf that they were not put up until the day after they were sustained. It cannot, therefore, be argued that the signboards had been maintained for such a length of time as to compel the presumption that all pedestrians were thereby warned of the purpose of appellant to stop their use of its tracks. Appellee testified that if there were any signboards then up forbidding the use of appellant's premises by pedestrians he did not see or know of their presence, and in the absence of evidence tending to show that before receiving his injuries he saw or had been informed of the presence of the signboards, it will not be presumed that a person of ordinary intelligence, situated as he was, must have seen them. The effect of signboards and warnings is thus stated in 33 Cyc. 761:

"As a general rule, pedestrians who use a railroad track as a thoroughfare, despite posted notices and other warnings forbidding it, are trespassers. The existence of the signboard or warning, however, is not conclusive that a person has no license to use the way and a license to use the tracks may be acquired by customary use despite such signboards or warnings."

In Murrell v. Mo. Pac. Ry. Co., 105 Mo. App, 88, 79 S. W. 505, the plaintiff recovered a verdict and judgment for $3,000.00 for injuries she sustained caused by one of the defendant's passenger engines on its right of way within the corporate limits of Jefferson City. The principal ground of defense interposed was that she was a trespasser, it being alleged and shown that the defendant railroad company had maintained for many years a sign, warning people off of the premises where the plaintiff was injured. The court held, however, that as it was shown by the evidence that though the sign was maintained by the defendant, as claimed, it was never obeyed and defendant and its employes knew that for a great many years it had been altogether ignored, the

plaintiff was not a trespasser when walking along the track or on the right of way.

As in the instant case the very brief time the sign-boards had been up, if up at all, before the accident, permitted no presumption that appellee knew of their presence before the accident, the trial court could not, as a matter of law, have declared him a trespasser. If, however, he in fact saw the signboards before the accident, under such circumstances as would have enabled a person of ordinary intelligence and prudence to understand their warning to keep off the appellant's tracks and nevertheless went thereon, his act in doing so made him a trespasser, in which event appellant would not be liable for his injuries, unless those in charge of the engine and cars by which he was injured saw his peril in time to have prevented the injuries by the exercise of ordinary care.

As appellee, in testifying, denied that he saw or knew of the presence of the signboards, and the only evidence introduced by appellant that tended to show his knowledge of their presence and the warning they gave not to go upon its tracks, was the testimony of some of its witnesses to the effect that the signboards were up before and when the accident occurred and that they were so situated as that appellee could have seen one or more of them before receiving his injuries, there was, in addition to the issue of fact as to whether the signboards were erected before the accident, the further issue of fact whether appellee knew of their presence before receiving his injuries, and these two issues, with the others previously adverted to, should have been submitted to the decision of the jury.

This brings us to the consideration of another ground urged by appellant's counsel for a reversal of the judgment, viz.: the alleged failure of the court to properly instruct the jury. The court gave at the request of appellee instructions marked 1, 2 and 3, and at the request of appellant instructions marked A, B and C, and refused instruction D, offered by appellant. Appellant seems to make no complaint of the form or matter of instructions 1, 2 and 3 given by the court, but only contends that they should not have been given, because it was entitled to the peremptory instruction asked by it. Instruction No. 1 presents the state of facts which, if in the opinion of the jury established by the evidence, au-

thorized a verdict for appellee. No. 2 properly defined ordinary care and negligence as used in the instructions. No. 3 correctly defined the measure of damages to be applied in the event of a finding by the jury in favor of appellee. As to the instructions given at the request of appellant, we find that A is the converse of instruction No. 1. B properly defined contributory negligence and told the jury in what state of case such negligence on the part of appellee would defeat a recovery. Instruction C submitted to the jury the issue whether appellee was intoxicated at the time of receiving his injuries, and if intoxicated, its effect as to the degree of care required of him and also of appellant. There was very little evidence of such intoxication, and as there was none whatever conducing to prove any knowledge thereof on the part of appellant's servants in charge of the engine and cars by which appellee was injured, the jury were properly told by the instruction that he was required to exercise such care for his safety as might reasonably be expected of a sober person of ordinary prudence situated as he was; and, in effect, that no greater care was required of appellant's servants under the circumstances than would have been required of them had he been a sober person of ordinary prudence. However, if this instruction were found objectionable, appellant could not complain of it, as it was given at its request.

Instruction D, of the refusal to give which appellant strongly complains, is as follows:

"The court instructs the jury that if there were signs located on the defendant's property at the time that plaintiff entered on defendant's private property with warning on said signs that the premises were dangerous and trespassing strictly prohibited 'and said signs were placed in a conspicuous place where persons entering said private property could see them, then the plaintiff when he went on said premises was a trespasser and was a trespasser on defendant's right of way at the time he was struck by defendant's car, if he was struck by said car, and those in charge of the train owed him no duty until his peril was actually discovered by them, and if you believe from the evidence that after his peril was actually discovered, the employes used all reasonable means to avoid injuring him, you should find for the defendant, or if you believe from the evidence that those in charge of the train did not see plaintiff's peril

before he was struck you should find for the defendant.''

The instruction in the form offered was incorrect, for which reason its refusal was not error. Saying nothing of its incorrectness in permitting the jury to find for appellant upon merely believing the facts therein predicated, without requiring that such belief must be based upon evidence, the instruction is further incorrect in that it is rested upon the erroneous hypothesis that the mere presence of the signboards in conspicuous places on the premises, however recently placed there, would authorize the jury to find that the appellee had knowledge of them when he went upon the premises and make of him a trespasser at the time of receiving his injuries. The instruction should have been worded as follows:

Although the jury may believe from the evidence that appellant at the time appellee received his injuries had on its grounds in one or more conspicuous places signboards warning pedestrians of the danger of going upon its tracks at the place of the accident and not to do so, if they also believe from the evidence that such signboards had not been up such length of time as would afford reasonable opportunity to persons in the habit of using appellant's tracks or intending to use them to know of their presence, then and in such event they would not be authorized to find that appellee, at the time of receiving his injuries, was a trespasser upon appellant's tracks, unless they should further believe from the evidence that he in fact saw the signboards or one of them before the accident, under such circumstances as would have enabled a person of ordinary intelligence and prudence, situated as he was, to understand their warning to keep off appellant's tracks at the place of the accident.

Upon another trial the court should give the instruction in the language indicated above.

Appellant further complains of the ruling of the trial court in permitting the witness, A. N. Nowlin, who claimed to have put up the warning signs before appellee received his injuries, to be asked on cross-examination the following questions and in compelling of him answers thereto:

''(Q.) Isn't it a fact that while you were setting that sign that they passed there and that Ben Warford said to you, 'Who are you going to bury?' and you said, 'I am

going to bury that sign,' and he said to you, 'Why did you wait until after the man got hurt to put it up?' Did that conversation occur? (Question objected to by counsel for the defendant; objection overruled, to which ruling of the court the defendant by counsel excepted.) (A.) Not with me. (Q.) Between you and Ben Warford in the presence of his brother Sam? (A.) Not that I can remember.''

The foregoing questions seem to have been asked Nowlin for the purpose of laying the foundation to contradict him by Ben and Sam Warford, of whose testimony appellant also complains. The following excerpt from the testimony of Ben Warford will indicate the questions asked him with reference to what occurred between him and Nowlin:

''(Q.) At that time, state whether or not you said to him this or this in substance: 'Who are you fixing to bury?' He said, 'I am fixing to bury this signboard;' and you said to him, 'Why didn't you bury it before the man got hurt?' (Question objected to by counsel for defendant; objection overruled, to which ruling of the court defendant by counsel excepted.) (A.) I did.''

It appears from the record that the testimony of Sam Warford, which, like that of Ben Warford, was introduced in rebuttal, was identical with that of the latter.

Not only did the questions put to Nowlin and the two Warfords, as well as the answers thereto, relate to a collateral fact, but the answers elicited by the questions were mere hearsay. In the first place, the question put to Nowlin in laying the foundation for the admission of the testimony of the two Warfords, being as to a collateral matter, his answer denying the conversation asked about was conclusive and should have ended the inquiry. In the second place, the purpose and effect of the interrogation, was not to get before the jury proof of an admission from Nowlin to Ben Warford that the signboards were not put up until after appellee's injuries were received, for he made no such admission, but to get before the jury the declaration contained in the question put by Ben Warford to Nowlin, ''Why did you wait until after the man got hurt to put it (the sign) up?'' which declaration was as to a collateral matter, and, as before stated, mere hearsay. It is a well known rule of evidence that when it is sought to impeach a wit-

ness by contradictory evidence the inquiry must relate to a fact that is otherwise relevant and admissible. If the inquiry relates to a collateral fact the answer of the witness is conclusive. He cannot be examined as to any fact which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence and discrediting his testimony in case he denies the fact. The rule referred to has been applied in this jurisdiction in the following cases, and others too numerous to mention: Babey v. Commonwealth, 169 Ky. 735; Hayden v. Commonwealth, 140 Ky. 634; Loving v. Commonwealth, 80 Ky. 507; Crittenden v. Commonwealth, 82 Ky. 164; Kennedy v. Commonwealth, 14 Bush 340; Champ v. Commonwealth, 2 Met. 24; Cornelius v. Commonwealth, 15 B. Mon. 539.

Although the jury were admonished by the court that the testimony in question could only be considered by them for the purpose of affecting Nowlin's credibility and not as substantive proof tending to establish any fact in the case, it was necessarily very prejudicial to the appellant, because calculated to impress the jury with the belief that the failure of Nowlin to deny, when questioned by Ben Warford, that he had waited until after appellee was injured to put up the warning sign, constituted an admission on his part that the sign had not, in fact, been put up until after the occurrence of the accident in which appellee received his injuries. The manifest incompetency of the evidence should have caused its exclusion by the trial court.

For the reasons indicated, the judgment is reversed and cause remanded for a new trial in conformity to the opinion. Whole court sitting.