## Louisville & Nashville Railroad Company v. Vaughan's Administrator.

### (Decided March 28, 1919.)

## Appeal from Clark Circuit Court.

1. Railroads—Injuries to Persons on Tracks—Trespassers or Licensees.—Whether a person injured while on a railroad track is a trespasser or licensee must depend, not on the fact that the accident happened in a city, incorporated town, or at a public crossing, but upon the number of persons using the track at said point.

2. Railroads—Trespassers or Licensees.—Whether decedent was a licensee or trespasser held under the evidence a question for the jury.

3. Railroads—Warnings—Lookout.—The duty of a railroad company to give the necessary warnings, keep a lookout and have its trains

under reasonable control applies in the yards of the company, if the same are used by the public to such an extent as to constitute the person injured a licensee.

4.  Pleading—Striking Out Pleading.—The court did not err in overruling the defendant's motion to strike from the petition, the allegations thereof not being objectionable.

5.  Railroads—Employes—Care Toward General Public.—The care devolving upon railroad employes toward the general public is to be determined by principles of law and not by the rules of the company for the guidance of its employes.

6.  Appeal and Error—Objections to Rulings of Court—Waiver.—Objections to the rulings of the court should be made during the progress of the trial and will be treated as waived unless proper exceptions are saved.

7.  Railroads—Signboards or Warnings—Pedestrians.—The existence of signboards or warnings is not conclusive that a pedestrian is not licensed to use the way. A license to use the tracks may be acquired by use on the part of the public, regardless of such signboards.

8.  Trial—Argument of Counsel.—Reasonable latitude should be accorded counsel in the closing argument to the jury, provided the argument be confined to facts shown by the evidence and reasonable deductions therefrom. Argument not supported by the record is improper.

BENJAMIN D. WARFIELD, SAMUEL M. WILSON and B. R. JOUETT for appellant.

HAYS & HAYS and R. C. MUSICK for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

This is an appeal from a judgment rendered in favor of the appellee, appellee's decedent having been killed in the appellant's yard at South Jackson, October 31, 1915. Many points are urged by counsel to reverse the judgment of the lower court, and we will discuss such of these as we deem material upon this hearing.

The company's yards are situated just south of the town of Jackson, and between Jackson, a city of approximately two or three thousand inhabitants, and Quicksand, a city of from one thousand to fifteen hundred inhabitants, the cities being abut three miles apart. There are some mines in the immediate neighborhood, and bordering on both sides of the company's tracks, leaving Jackson, are several residences and a number of houses belonging to the railroad company.

. Decedent, in company with three companions, while walking in the company's yards, was overtaken by an

engine that was backing from the depot southwardly to the roundhouse, and he and two of his companions were killed, the fourth being injured. There is a wagon road, also a plank walk, paralleling the company's tracks for a considerable distance southwardly from the town limits. It appears from the evidence that neither of these ways was much used by pedestrians or vehicles. At a point approximately 295 feet north of the scene of accident is a street crossing. The engine referred to had just a short time previously reached Jackson, had parked its coaches, and was proceeding southwardly to the round house, headlight facing north. The flagman of the train was on the rear of the tender and had a white lantern and a red lantern, but neither of these gave much light; he did not see the decedent in time to prevent the accident; he gave the signal for the engineer to stop at about the same time as an engineer on a passing train sounded the alarm. The engine was stopped but not until after it had run over the decedent.

It is urged by the appellant that its motion to strike from the petition and its demurrer to the petiton should have been sustained, and also that it was entitled to a peremptory instruction, both theories being based on the fact that decedent was a trespasser and, therefore, the company was under no duty to exercise ordinary or any care to discover his presence on the track.

In the earlier cases it was held that the railroad company's duty to maintain a lookout, give warnings and have its trains under reasonable control was confined to cities, public crossings and thickly populated communities, and did not extend to rural communities or sparsely settled localities, though the track at these latter places may have been used by a large number of persons Shackelford v. L. & N. R. R. Co., 84 Ky. 43; L. & N. R. R. Co. v. Vittitoe's Admr,, 41 S. W. 269; Miller's Admr. v. I. C. R. R. Co., 118 S. W. 348; Davis v. C. & O. Ry. Co., 116 Ky. 144; L. & N. R. R. Co. v. Redmon's Admx., 122 Ky. 384; C. & O. v. Nipp's Admx., 125 Ky. 49; C. N. O. & T. P. Ry. Co. v. Harrod's Admr., 132 Ky. 445; Helton's Admr. v. C. & O. Ry. Co., 157 Ky. 380; L. & N. R. R. Co. v. Schuster, by, &c., 10 Rep. 65; Johnson v. L. & N. R. R. Co., 29 Rep. 36; Brown's Admr. v. L. & N. R. R. Co., 97 Ky. 228; L. & N. R. R. Co. v. Lowe, 118 Ky. 260.

This rule has been modified so that now the question whether a party who is injured is a trespasser or licensee must depend, not on the fact that the accident happened in a city, incorporated town, or on a public crossing, but on the number of persons using the tracks at the place of the accident. Shrader v. L. & N. R. R. Co., 114 S. W. 788; L. & N. R. R. Co. v. McNary, 128 Ky. 414; C. & O. Ry. Co. v. Warnock's Admr., 150 Ky. 75; Corder's Admr. v. C. N. O. & T. P. Ry. Co., et al., 155 Ky. 536; C. N. O. & T. P. Ry. Co. v. Blankenship, 157 Ky. 699; C. & O. Ry. Co. v. Dawson's Admr., 159 Ky. 296; Willis' Admx. v. L. & N. R. R. Co., 164 Ky. 124; C. & O. Ry. Co. v. Isaacs, 170 Ky. 190. Many other cases on both these propositions could be cited, but in view of the fact that the accident complained of happened in the company's yards we will direct our attention to a consideration of cases involving similar accidents, limiting the discussion to cases arising out of yard accidents. We will consider first the line of authorities relied upon by appellant, a few cases being used for illustration.

Kentucky Central R. R. Co. v. Gastineau's Admr., 83 Ky. 119. In this case decedent was treated as a trespasser, and there is nothing to show the extent of the use of the yards by the public, if any.

L. & N. R. R. Co. v. Bays' Admr., 142 Ky. 400. The court states there is no proof that the tracks were used by pedestrians to any considerable extent at the time of night the accident occurred.

Watson's Admr. v. C. & O. Ry. Co., 170 Ky. 254. In this case it appears that the right of way was enclosed with wire fences on each side, at what is termed the "Harrison street crossing," and a cattle guard extends across both tracks of the railroad, and is connected at the ends by wings, extending to the fence on each side of the right of way; nor were there any houses on either side of the right of way fronting thereon. The number of persons using the track at the point of accident is not given in the opinion, the court stating: "The enclosure of the right of way with fences and a cattle guard was all the railroad company could be expected to do to keep persons from using the tracks, and there was an entire absence of any necessity for traveling upon the tracks or any invitation to do so."

L. & N. R. R. Co. v. Redmon's Admx., 122 Ky. 385, is to the same effect, the tracks of the company being

enclosed by fences on each side, with a bridge at one end and a cattle guard at the other, the number of persons using the tracks not being disclosed.

McDermott, by, &c. v. Ky. Cent. R. R. Co., 93 Ky. 408. In this case the court says: "And, although there was some testimony showing that persons occasionally passed from Vine street along or upon the track to the depot, it does not appear such passway was then being regularly used, or ever was used by license of the company, express or implied." There was a sign in the vicinity of the place where appellant was injured, and he had several times been driven away—force being at one time used for that purpose.

Beginning with the case of I. C. R. R. Co. v. Murphy's Admr., 123 Ky. 787, and continuing through a long line of cases the court has consistently held in cases presenting facts similar to the one at bar it is a question for the jury whether, in the use of the company's tracks, at the point of accident, a person injured is to be treated as a licensee or trespasser. The accident in the Murphy case occurred in the company's switch yard in the town of Central City; the tracks had been used by the public for fifteen years or longer, as a roadway for foot passengers, with the knowledge of the operators of the trains. The court says: "The use is shown to have been so extensive, constant and continued as to raise a presumption of knowledge by the company that it was so used." We quote further from this opinion:

"If the railroad company knows that the public habitually uses its tracks and right of way in a populous community as a foot passway, so that it knows that any moment people may be expected to be found thereon, such knowledge is treated as equivalent to seeing them there, and their presence must be taken into consideration by the train operatives in the movement of their trains. Such foot passengers may be in law only trespassers or licensees. They may, indeed, have no legal right to be there or to use the track; but the question comes back, if they are there, and known to be there, what, then, is the company's duty as to running its trains? It is admitted that the company has the superior right—nay, maybe has the exclusive right—to the tracks, and that some way ought to be provided for keeping trespassers off them altogether. But the fact remains, the tracks are open, inviting for easy travel, are traveled

constantly, and so known to be by the company. The difference between the cases in the country and those in thickly settled towns and cities is one of practical materiality. In the country there are occasional sporadic uses of the tracks by the foot passengers, but they are comparatively rare. To compel the railroad trains to creep along under full control, in anticipation of what probably would not occur, viz., the meeting or overtaking of a stray trespasser, would not be reasonable, because most likely unnecessary. But in populous communities the probabilities are all the other way. The foot passengers, from long habit of use, which are known to and suffered by the company, may reasonably be expected at all times and in any number. It is more than a mere probability —it is a reasonable certainty—that they will be found there. The company should no more shut its eyes to such a probability within its knowledge, than to the actual fact of the presence when known. We will not say that to dash at uncontrollable speed through such a town, where people are known to be using the tracks for passing, is not negligence. Let the jury say whether it is.''

In I. C. R. R. Co. v. Holland's Admr., 147 Ky. 699, involving an accident that occurred in the Central City yards, the court holds that the case was properly submitted to the jury. To the same effect is C. N. O. & T. P. Ry. Co. v. Harrigan's Admr., 149 Ky. 53.

Carter's Admr. v. C. & O. Ry. Co., 150 Ky. 525, is a case in many respects similar to the one at bar, and on the authority of this case alone we would be compelled to hold that the lower court properly submitted this case to the jury, the territory, the use and location of the yards, the physical facts and general surroundings being so nearly identical to those in the instant case. One Blevins lost his life in the yards of the railroad company immediately west of the town of Russell, in Greenup county. The county road paralleled the company's tracks at the point of accident. A very illuminating diagram will be found on page 526 of the reported case. The adjacent towns had a population somewhat smaller perhaps than Jackson and Quicksand. A wire fence separated the tracks from the county road; and, as in the present case, there was a base ball field near the point of accident. It was urged in the case under discussion that the accident having occurred in the company's private yards, which were not in a town or city, or intersect-

ed by a public crossing at the point of accident, the company did not owe the injured man the duty of lookout, etc. The court on this point said: "The fact that the accident did not occur in an incorporated city or town cannot, of itself, affect the case; it is the nature and use of the crossing by the public that is to determine the applicability of the rule which requires the lookout."

. . .

"If the use of the track by the public for crossing purposes was general, and acquiesced in by the railroad company, it was charged with notice of such use, and the trespasser became a licensee to whom the company owed a lookout duty, although the accident happened in the company's yard."

To avoid the application of the general rule as to liability for the accident it was contended in the Carter case, as well as this one, that among those using the track were employes of the company and hence there was no such use of the crossing by the general public as would bring the case within the rule. The daily use of from four hundred to five hundred people was shown in that case, while in the case at bar the testimony as to the use ranges from ten to five hundred persons daily. The court, in the Carter case, said: "The evidence does not show the use of the crossing was confined to the employes of the company; on the contrary, it tended to show that the crossing was so used by employes and the general public to the extent indicated," and the court was unwilling to say the crossing was not used by the general public to such an extent as to deprive Blevins of his right as a licensee.

Southern Ry. Co. v. Sanders, 145 Ky. 679, furnishes a splendid illustration of the point under discussion. In that case appellee recovered a verdict against the company because of injuries received in the company's yards; on appeal the case was reversed on the ground that the court was satisfied from the evidence the company was under no duty to anticipate the presence of persons on its track at the time and place the appellee was injured, the court saying: "It does not follow that because persons who in large numbers habitually use its tracks and right of way during certain hours of the day or during the entire day, are to be treated as licensees, that it will be used in the same manner during the night or that the company owes in the day and night the same

degree of care.'' In remanding the case for a new trial the court makes use of the following language: ''If there is another trial, and evidence is introduced in behalf of appellee to show that large numbers of persons were habitually accustomed to using during the night the tracks and premises of the appellant company at the place where appellee was injured, the case should be permitted to go to the jury, as such use imposed upon the company the duty under the circumstances of this case of a lookout and giving warning of the movement of the engine. When the lookout duty is required it means such a lookout as will be effective for the purpose intended, and reasonably sufficient to discover the peril of persons on the track, as well as to stop the train or engine as soon as it can be done by the exercise of reasonable care when warning or notice of the danger is given. To meet this duty where it is required as to the backing engine in the night time there should be either a light on the end of the tender or a brakeman stationed there with a lantern, or a brakeman, with a lantern, walking in front of the moving engine. The fact that the engineer may be keeping a lookout is not sufficient when the way is not lighted so that he can see objects on the track. But, unless there is the quantity of evidence indicated upon the use of the tracks and premises by the public during the night or about the time appellee was injured the court should direct a verdict for the railway company.''

On the second trial of this case there was a verdict for the plaintiff, from which an appeal was taken. Opinion on the second appeal is found in 154 Ky. 421, where, after referring to the evidence introduced as to the use of the company's yards and the cases on the subject, the court reaches the following conclusion: ''So, in the case before us. The yards of appellant were open, and as they afforded a nearer and more direct route for the many persons passing between Woodford street and Court street, or from the north end of the station to Court street, it was but natural, and to be expected, that pedestrians would pass through them when and as it suited their convenience. The evidence shows that this use was continued until after train time, or as late as ten o'clock at night, thus bringing the case within the rule announced in the opinion upon the first appeal. The evidence was, therefore, sufficient to carry the case to the jury; and the jury being the judges of the weight to

be given the evidence, we cannot say, under all the circumstances, that their verdict is flagrantly against the weight of the evidence."

L. & N. R. R. Co. v, Taylor's Admr., 158 Ky. 633; L. & N. R. R. Co. v. Lowe, 118 Ky. 260. These two cases involve injuries to employes. Burton's Admr. v. C. N. O. & T. P. Ry. Co., 113 S. W. 442.

We will not extend this phase of the opinion any further than by reference to the case of Southern Ry. Co. in Ky. v. Jones, 172 Ky. 8, one of the latest cases on the subject from this court, and in which the court states that under the facts presented by the record a peremptory instruction was not proper. The appellee, Jones, was injured in the company's yards at Lawrenceburg, and in the course of the opinion the court says: "In a long line of cases we have held that such use of a railroad company's tracks as was here shown, imposes upon it the duty of operating its trains at a reasonable rate of speed, keeping a lookout and giving warning of the train's movements, and that this care is not only required at places where the public have a right to use the right of way and tracks, as at street crossings and the like, but is also to be applied at points on its road in cities, towns and populous communities, where the public generally have been in the habit of using, with the knowledge and consent of the company, its tracks and right of way."

In view of the foregoing we do not think the court erred in submitting the case to the jury.

Error of the court in overruling the defendant's motion to strike from the petition is urged as a ground for reversal.

The petition, with greater particularity than necessary, described the scene of the accident; that it occurred between Jackson and Quicksand; the tracks between said two places included the company's yards; and for ten years last past the inhabitants of Jackson and Quicksand and that vicinity had continuously and at all times, both day and night, used the switch yards and tracks between said two cities for public travel; the company had notice of such use by the public, and at or near the point of injury there is a public crossing travelled and used by the public across the switch yard; and also that the company had rules prohibiting the operation of its engines and tenders in the switch yard, where the

injury occurred, at a greater speed than four miles an hour.

We do not find anything prejudicial to the rights of appellant in overruling the motion to strike. The object of thus alleging the location of the company's yards, as between the two cities named, coupled with the allegation that the inhabitants thereof used the switch yard, was not objectionable. It apprised the company that there was such a use of the tracks at the point in question as to charge it with notice, necessary to bring appellee within that line of cases holding where the public had in great numbers used the tracks of the company this made it a question for the jury, as to whether the travel and use was sufficient to charge the company with giving to the persons using their track warning, lookout duty, and having their trains under reasonable control. While it is true the accident did not happen within the limits of an incorporated city it was so close thereto and the community was so populated, and the tracks, according to the testimony, were used by that number of persons, as would make this a case for the jury.

The allegation as to the rules of the company prohibiting the operation of its engines at a greater rate of speed than four miles an hour was not proper, and should have been stricken on defendant's motion. As said in L. & N. R. R. Co. v. Dyer, 152 Ky. 264: "The court has committed itself to the doctrine that the care the railroad employes must exercise towards the general public is to be determined by the principles of law and not by the rules adopted by the company for the guidance of employes." The rules of the company are not, therefore, admissible for the purpose of showing either proper care or negligence on the part of the company's employes. See also Louisville Ry. Co. v. Gaugh, 133 Ky. 467; Southern Ry. Co. v. Stewart, 141 Ky. 270.

But notwithstanding the fact the court overruled the motion it does not appear from the record defendant was in any wise prejudiced thereby. It was sought to prove this rule by the witness Stivers, whose deposition was taken, and to each of the questions pertaining to the rules there is an objection noted and the question certified to the court for decision, and the court's ruling on these objections does not appear, but even though it did the witness states that he did not know what the rule was

regarding the speed of engines in the Jackson yard at the present time, that is, at the time of the accident.

Further points covered by the motion to strike were based on the theory that decedent was a trespasser, and in view of the conclusion we have reached as to the status of the decedent at the time of the accident we do not think it necessary to discuss these points, except that in answer to the contention that there is no allegation as to the amount of the use, we may say we think the allegations of the petition ample to cover this point.

Complaint is also made of the action of the lower court in its admonition or statement to the jury, which had had the case under consideration for two days and announced to the court that they could not agree, and it is alleged in the additional grounds for a new trial that the court thus addressed the jury: "Take the papers and return to the jury room and make a verdict, as some jury will have to make a verdict in the case. This court does not adjourn until Saturday, December 23rd." No objection or exception was made or taken by the defendant at the time, nor was this urged or mentioned in the original motion and grounds for a new trial, and though the verdict was rendered and the judgment entered December 20, 1916, the first intimation that the court had of this complaint was April 24, 1917, when defendant tendered its additional grounds for a new trial.

There is a conflict in the decision as to whether it is error for the trial court to threaten to keep the jury a given length of time, unless agreement is sooner reached. But we cannot go into a discussion of this matter, because the defendant did not object or except to this statement or admonition of the court. Rulings of the trial court if not excepted to in that court will be deemed to have been waived. Civ. Code, secs. 333 and 334; Edelen's Pleadings, etc., sec. 334, and notes; Reece v. West, 145 Ky. 331; Employers' Liability Assurance Corporation v. Stanley Deposit Bank, 140 Ky. 735.

The point is mentioned but not seriously urged that there were certain signboards or warnings at either end of the company's yards, but there is no evidence that decedent either knew of the presence of said signboards or passed either of them the night he was killed. The question of the effect of these boards is thus discussed in Southern Ry. Co. in Ky. v. Jones, 172 Ky., pp. 12, 13:

"In view of the abundant evidence as to the long and constant use by the public of appellant's tracks at the place of the accident, we would be unauthorized to say that the mere presence on or near the grounds of signboards forbidding the use of the premises by the public, even though they had been maintained for a greater time than appellant's evidence tended to prove, they were here maintained, would have justified the giving of the peremptory instruction asked by it."

It was evidenced in that case that the signboards had not been up a very long time, and the court thus further states: "And in the absence of evidence tending to show that before receiving his injuries he saw or had been informed of the presence of the signboards, it will not be presumed that a person of ordinary intelligence, situated as he was, must have seen them," The court cites with approval the text found in 33 Cyc. 761 as follows:

"As a general rule, pedestrians who use a railroad track as a thoroughfare, despite posted notices and other warnings forbidding it, are trespassers. The existence of the signboard or warning, however, is not conclusive that a person had no license to use the way; and a license to use the tracks may be acquired by customary use, despite such signboards or warnings."

The facts bring this case within the rule mentioned in the foregoing citations.

Complaint is made of the instructions given and refused. As to the instructions given, they are almost a literal copy of the instructions directed to be given upon the retrial of L. & N. R. R. Co. v. McNary, 128 Ky. 408, and these instructions have been approved in later cases.

As to the instructions tendered by the defendant it is sufficient to say the facts in the McNary case, supra, are so similar in many details to those in the instant case, that the instructions written out by the court were intended to cover the whole law of that case. For example, appellant argues there was evidence that decedent and his companions did not get on the main track until about the time the flagman first saw them, and when the engine was only 15 or 20 feet away. In the McNary case the court thus states: "She had on a bonnet and just when she got on the track she was struck and killed by a fast passenger train coming from the south, and running 40 or 50 miles an hour."

In our opinion the instructions given by the lower court embrace the theories of both the plaintiff and defendant. One of the points urged for reversal is that the verdict is not sustained by sufficient evidence, but this ground is without merit. We think there was ample evidence to sustain the verdict.

The last point urged is misconduct of counsel in his closing argument to the jury, it being alleged counsel stated, in effect, that ordinary care would require the defendant to have had a headlight on the rear of the engine or tender, as it was backing in defendant's yard. The point seems to be made on the theory maintained throughout counsels' brief, that decedent was a trespasser and, therefore, not entitled to a headlight or any light, and we do not think the argument was improper; certainly not prejudicial to the defendant. Reasonable latitude should be accorded counsel in the closing argument to the jury, provided the argument be confined to facts shown by the evidence and reasonable deductions therefrom. Argument not supported by the record is improper.

On the whole case, for the reasons hereinbefore stated, finding no error in the judgment appealed from the same is affirmed.