## Louisville & Nashville R. Co. v. Pugh's Admrx.

(Decided November 14, 1919.)

### Appeal from Breathitt Circuit Court.

Trial—Continuance.—Under the circumstances of this case it was prejudicial error for the trial court not to postpone the trial for an hour to secure the presence of an important witness or to let an affidavit containing his evidence be read, although the party, whose witness he was, announced ready for trial in the absence of the witness.

O. H. POLLARD, SAMUEL M. WILSON, and BENJAMIN D. WARFIELD for appellant.

J. M. McDANIEL, HOBSON & HOBSON, HAZELRIGG & HAZELRIGG and C. C. TURNER for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL—Reversing.

Mason Pugh and three companions, one of them being ———— Vaughn, while walking on the track of the railroad company in its yards near Jackson, Kentucky, were struck by the tender of a backing engine. Three of them, including Mason Pugh and Vaughn, were instantly killed and the other one badly injured by the collision.

In this suit by the administratrix of Mason Pugh to recover damages for his death brought in the Breathitt circuit court there was a verdict and judgment against the railroad company for $15,000.00 and on this appeal a reversal is asked on several grounds. The material ones will be noticed in the course of the opinion.

The administrator of Vaughn also brought a suit in the Clark circuit court against the railroad company to recover damages for his death, and that case having been brought here on the appeal of the railroad company the opinion affirming the judgment of the Clark circuit court may be found in 183 Ky. 829.

From that opinion we take the following statement of the facts which are as applicable here as they were in the Vaughn case:

"The company's yards are situated just south of the town of Jackson, and between Jackson, a city of approximately two or three thousand inhabitants, and Quicksand, a city of from one thousand to fifteen hundred inhabitants, the cities being about three miles apart. There are some mines in the immediate neighborhood, and bordering on both sides of the company's tracks, leaving Jackson, are several residences and a number of houses belonging to the railroad company.

"Decedent, in company with three companions, while walking in the company's yards, was overtaken by an engine that was backing from the depot southwardly to the roundhouse, and he and two of his companions were killed, the fourth being injured. There is a wagon road, also a plank walk, paralleling the company's tracks for a considerable distance southwardly from the town limits. It appears from the evidence that neither of these ways was much used by pedestrians or vehicles. At a point approximately 295 feet north of the scene of accident is a street crossing. The engine referred to had just a short time previously reached Jackson, had parked its coaches, and was proceeding southwardly to the round house, headlight facing north. The flagman of

the train was on the rear of the tender and had a white lantern and a red lantern, but neither of these gave much light; he did not see the decedent in time to prevent the accident; he gave the signal for the engineer to stop at about the same time as an engineer on a passing train sounded the alarm. The engine was stopped but not until after it had run over the decedent.''

In the Vaughn case as in this it was insisted on behalf of the railroad company that Vaughn was a trespasser and therefore the company was under no duty to exercise any or ordinary care to discover his presence on the track, but the court overruled this contention and found that the use of the tracks at the place of the accident by the public was sufficient to put on the railroad company the duty it owes to licensees.

The facts in both cases being precisely the same we adopt the conclusion reached by the court in the Vaughn case and may pass the argument of counsel for the railroad company upon this point without further comment.

One of the grounds urged for reversal was the refusal of the trial court to grant a continuance on account of the absence of B. R. Jouett, an attorney who was connected with the case. On the state of the record we find no error in the action of the trial court in refusing a continuance for this cause.

It appears that when the motion for continuance to another term of court was made the court ''offered to set this cause for trial on the 20th day of the present term of this court, which is one week ahead, but by consent of the attorney for defendant it is ordered that said cause be set for trial on the 15th day of the present term of this court.'' It thus appears that the trial by consent of the attorney who asked the continuance was fixed for a day certain in the term and it further appears that on the day fixed the trial was entered into.

Another ground for reversal relied on is the refusal of the trial court to postpone for about one hour the trial so that the personal attendance of Ira Kelly, a witness for the company, could be secured, or to permit an affidvait stating what Kelly would testify to if present to be read on the trial.

It appears that on the 11th day of the term an order for the personal attendance of Ira Kelly was issued by the court commanding him to be present as a witness

on the 15th day of the term when the trial was to commence. When the case was called for trial this order was made:

"This cause came on for trial and both parties announced ready for trial. Whereupon came the following jury, . . . who were accepted and sworn and proceeded to hear the evidence and not having time to complete the trial were admonished by the court and adjourned over until tomorrow at eight o'clock."

The attorney for the company states in an affidavit that when this order was entered he said to the court that he could not try the case without the presence of Kelly, who, he was informed, had been delayed by reason of a wreck on the railroad and could not reach Jackson on that day; and only agreed that the trial might be gone into upon the condition that the court would give him an opportunity to procure the attendance of Kelly, and that when the court said that was "all right" he announced ready for trial. But this is controverted by affidavits as well as by recitals of what the trial judge said appearing in the bill of exceptions.

It further appears from an uncontroverted affidavit of the attorney for the company that the order for the personal attendance of Kelly as well as a subpoena was executed and that Kelly "was present as a witness" on the 15th day of the term, but that the case was not called until the 16th day, and Kelly had left Jackson before the case was called and gone to an adjoining county.

It is also shown by the record that on the second day of the trial the attorney for the company discovered that Kelly was not present as he had agreed to be and thereupon he procured a forthwith attachment and sent an officer with the attachment to an adjoining county for Kelly to arrest him and bring him to court; that about four o'clock on the afternoon of this day Kelly yet not being present the attorney moved the court to suspend the trial until the arrival of the L. & N. train at four-forty p. m. on which train he expected Kelly to arrive (and on which he did arrive), and in support of this motion the attorney filed his affidavit which, after setting out the circumstances showing the attendance and absence of Kelly that we have related, averred that Kelly would arrive at four-forty p. m., or in about one

hour, and that if present would say as a witness "that he was a flagman on the engine that ran over and killed Pugh, and at the time was riding on the rear end of the tank on the left hand side thereof, with his foot upon the step and his hand upon the handhold; that he signalled said engine at the depot that everything was in readiness for said engine to start to the round house, after the coaches had been disposed of on the coach track and said engine had been returned to the main track; that the fireman on said engine, to-wit: John Derickson, placed a red light upon the rear end of said tank before said engine started to back up the main line to the round house, and that said Ira Kelly took his position as aforesaid on said tank and that said red light remained on said tank and was burning at the time and until after the accident; that there was also a white light on the rear end of said tank and the said Ira Kelly had said white lantern in his hand; that it was a very dark night; that he did not see Mason Pugh or any of his associates until the engine and tank was within 15 or 20 feet of said parties; that he at once gave a stop signal to the engineer with his lantern and hollered to the parties in a loud voice to 'look out;' that as said engine was backing up the track there was on the side next to, and adjacent to said line of track, a long, heavy loaded freight train to which was attached one engine in front and two engines behind pushing and helping convey said train; that said train was moving, and about the time said Ira Kelly discovered the said Mason Pugh and his associates on the track, the engine in the rear of said freight trains passed the tank upon which affiant was standing with his lantern; that one of said engines gave a stop whistle; that the said Ira Kelly was on the side of the tank next to the river."

It is further shown that when the court refused to postpone the trial for the time requested in order that the presence of Kelly might be secured the attorney for the company at the close of its evidence moved the court to permit him to read the affidavit setting forth what Kelly would testify to if present as a deposition, but the court refused to permit the affidavit to be read, for the following reasons assigned by the court and set out in the record: "That when the case was called for trial

no affidavit was filed for a continuance on account of said witness or any witnesses and that when the trial commenced the court required both parties to call their witnesses and being sworn they were put under the rule. The court also duly admonished both parties that when the trial begun that he would not permit any delay on account of either party not having its witnesses present when they were to testify and to have them ready so as not to delay the trial."

It is also shown by the bill of exceptions that the attorney for the company "before the swearing of the jury herein stated to the court that Ira Kelly, a material witness for the defendant who was present upon the call of the case for trial on the day previous to the day upon which the jury was impaneled had without consent of defendant or without its knowledge departed from the court on a temporary visit to Perry county, and that defendant announced ready for trial upon the condition that said Kelly under process of the court would appear and testify for the defendant on the trial of this case."

It is further shown "That when the case was called for trial no affidavit was filed for continuance on account of said witness or any witness and that when the trial commenced the court required both parties to call their witnesses and be sworn and they were put under the rule, and that said Kelly was never called and sworn and was never put under the rule.

"The court also duly admonished both parties that when the trial begun he would not permit any delay on account of either party not having its witnesses present when they were called to testify and to have them ready so as not to delay the trial." The record further shows that the court said in overruling the motion and grounds for a new trial "that he did not know that Ira Kelly was on his way to court under attachment or that he had been in attendance as a witness in this case, and had left court without defendant's knowledge or consent."

The record, as we have seen, shows, that when the case was called both parties announced ready for trial; and also that the statement of the attorney for the company that the court told him in substance that he would give him an opportunity to get the attendance of Kelly

before the trial concluded is disputed, but if we should leave this feature entirely out of view and treat the case as if both parties announced ready for trial without anything being said at the time as to the absence of Kelly we are yet of the opinion that under all the facts and circumstances of this case it was prejudicial error not to permit the affidavit of Kelly to be read as a deposition.

Kelly was the only person on the tender when the accident happened and it is plain that he was a very material witness for the company. He was present in court on the day the case was set for trial but it was not called until the next day and in the meantime Kelly, without the knowledge or consent of the company or its counsel, left the court on a temporary visit to an adjoining county and counsel for the company had the right reasonably to and did expect that he would return in time to testify as a witness but when it appeared he had not returned on the second day of the trial a postponement was asked for about one hour or until the arrival of the train on which Kelly was expected to and did come, but this request was denied, as was also the motion to permit the affidavit as to what Kelly would say to be read as a deposition.

We have not overlooked the practice that matters like this are largely in the discretion of the trial court and its rulings will not be disturbed unless it appears that the discretion was abused. It may also be admitted that when the attorney for the company discovered at the time the case was called for trial that Kelly was not present he should then have asked a continuance or postponement on account of his absence, but the failure of the attorney under the circumstances to make this motion did not, as we think, justify the court in view of the affidavit filed by counsel, in refusing to postpone the trial for one hour or to permit the affidavit of what Kelly would say to be read as his evidence.

We are further persuaded of the prejudicial effect of the absence of Kelly's evidence either in person or by affidavits by the reference made to his failure to testify by counsel for plaintiff in his closing argument.

Another error assigned is misconduct of counsel for plaintiff in the arugment of the case to the jury. This matter, in view of the fact that there must be another

trial, we may pass without comment except to say that the argument of counsel, although perhaps proper exceptions were not saved to it, was in more than one respect highly improper.

Other alleged errors in relation to the admission and rejection of evidence and in giving and refusing instructions are pointed out by counsel but we do not find that the trial court committed any substantial error in these respects.

Wherefore the judgment is reversed with directions for a new trial.