## L. & N. Railroad Company v. Stidham's Administratrix.

(Decided February 20, 1920.)

### Appeal from Breathitt Circuit Court.

1. Railroads—Action for Death—Evidence.—In an action to recover damages for death of decedent, evidence examined and held insufficient to prove that he was killed by a train of the defendant, or that he was a licensee, or there was any negligence in the operation of the train by which it was claimed he had been killed.

2. Railroads—Action for Death—Recovery.—Where it is a mere matter of speculation and guesswork as to how decedent lost his life, and the theory offered by plaintiff is but one of several equally tenable explanations, no recovery can be had.

3. Railroads—Action for Death—Breach of Duty Due Decedent.—The liability of a railroad company for a breach of a duty due decedent

must be determined by the principles of law and not by rules of the company with reference to the engineer and fireman keeping a lookout. Hence it was error to permit plaintiff to introduce evidence of such rules.

O. H. POLLARD, J. M. BENTON and BENJAMIN D. WARFIELD for appellant.

RYLAND C. MUSICK, ED. C. O'REAR and J. B. ADAMSON for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

This is an appeal by the defendant, Louisville & Nashville Railroad Company, from a judgment for $17,000.00 in favor of the administratrix of Samuel B. Stidham for his death. The refusal of the court to direct a verdict for the defendant is the chief reliance for a reversal.

Counsel for plaintiff admit "that the burden is upon us to show affirmatively (1) that deceased was killed by a train of the railroad company; (2) that he was a licensee upon its track at the point at the time he lost his life, and (3) that his death resulted from the negligent operation of the train by which he was killed."

The only evidence introduced to establish the first and third of these propositions is in substance as follows:

Decedent left his home in Jackson about two o'clock on the afternoon of March 16, 1917, and walked to Quicksand, about three miles distant. He was seen at Quicksand that afternoon. The last person who saw him alive was Mrs. Viers, who saw him as he passed her house between six and seven o'clock that evening walking along defendant's railroad tracks going in the direction of Jackson. Her home is between Quicksand and Dumont. His body was found the next morning between four and five o'clock between Dumont and Jackson near the mouth of Stray branch. Two men walked along the railroad tracks from Quicksand to Jackson between eight and nine o'clock that evening, but his body was not at that time at the place where it was found the next morning, nor did they see anything of him on the trip. A train known in the evidence as the "shifter," going from Quicksand to Jackson, stopped at Dumont station at 9.40 that evening for orders and then proceeded to Jackson. This train consisted of a switch engine and three or four cars. The engine was in front and pulling the cars, but it was backing. On the end of the tender, which was the

front of the train, was a lighted headlight, and across the end of the tender about waist high to a man standing on the track, there is a beam some six or eight inches wide, to the center of which is attached the draw bar.

Decedent, when found, was lying on his face in a pool of blood alongside of the track with his head toward Jackson and his feet a short distance beyond a cattle guard. There was a circular cut or bruise about the size of a fifty-cent piece over his right eye; his face was scratched and bruised as though from falling in crushed rock. There was a bruised place on his back about six inches wide above his hips and another on the calf of his right leg about three inches wide and five or six inches long. Between his feet and the cattle guard the rubber heel of his right shoe was found and there was an indentation upon the remaining part of the heel of his shoe.

Plaintiff argues that these facts not only tend to prove that decedent's right heel became fastened in the cattle guard as the train approached, that the beam on the tender of the backing engine struck him in the back causing the wound found there and knocking him forward with such force as to make the wounds on his face, but also to refute any other theory as to how he was killed; that if decedent had been killed by anyone striking him with some instrument in the face the scratches would not have been there; that he would have been found lying on his back and not on his face, and the heel would not have been off of his shoe and where it was found.

This is, however, in our judgment but one of several equally plausible explanations or theories as to how decedent may have met his death. Even if we assumed he was killed at the place where he was found it might as reasonably be inferred from the evidence that he was struck on the forehead by an assailant, fell upon his back against the tie, which caused the bruise found there, and rolled over on his face. Surely in such an encounter he might have lost the heel of his shoe and received the bruises described as well as if he had been struck by the train. Not only so, but plaintiff's theory, even if it could be sustained to the extent that decedent was killed by defendant's train, fails completely as to the way in which he was killed, as every attendant circumstance might have been present had he been killed in attempting to get

on, or from stumbling against one of the moving cars of the train at or near the cattle guard. The proven facts on this point are in nowise analogous to those of L. & N. Ry. Co. v. Bay's Admr., 142 Ky. 400, or L. & N. Ry. Co. v. Taylor's Admrx., 158 Ky. 663, upon which plaintiff relies, but are such as to bring the case rather under Caldwell's Admr. v. C. & O. Ry. Co., 155 Ky. 609, a much stronger case for the plaintiff than this, and like cases.

But weaker still is plaintiff's case when it comes to the question of negligence, even if we might assume defendant was under a duty of maintaining a lookout at the place where decedent was found and at the time it is claimed he was killed, which fact was not, however, established since the usage proven was clearly insufficient to make licensees of persons using the tracks at that time and place.

There is no proof whatever in the entire record of any negligence in the operation of this train unless it too can be inferred from the character of wounds found upon the body of deceased, the loss of the heel of his shoe and the way his body was lying when found. To accomplish this result it must be inferred from these facts not only that decedent was killed while standing upon the track with his foot fastened in the cattle guard as the train approached, but also that he was so stationed for a sufficient time for the engineer to have seen him in time to have stopped the train before it struck him. The possibility that he may have stepped in front of the train too late for the engineer to have stopped the train before striking him, or even to have seen him at all, or that he was killed by attempting to get on the train after the engine had passed him, must be excluded from consideration and without evidence to warrant it.

That counsel realize this weakness in their case, in part at least, is evident from their contention that it was negligence upon the part of the defendant not to have a man stationed on the front end of the tender to maintain a lookout for persons whose presence upon the tracks ought to have been anticipated. But clearly such were not the requirements of prudent operation in this case, even if he had been a licensee. The place where plaintiff contends decedent was killed by defendant's train was out in the country and where he had no right to be unless by sufferance.

The evidence of usage in the night time when decedent is supposed to have been killed by defendant's train and by reason of which it is claimed he was a licensee to whom a duty of lookout was due is furnished by two witnesses who testify that upon occasions they had seen *several* persons walking on the tracks at or near the place, and one other who states quite indefinitely in answer to a question as to the amount of travel at this place after eight or nine o'clock at night:

"Well, they are traveling it all the time."

That under such circumstances a railroad company in backing an engine over its tracks must not only maintain a lookout but to make it effective must place a man on the front end of the tender is to us a novel contention and one wholly unsupported by any authority so far as we know.

Hence not only is there no proof of negligence, but it is mere matter of speculation and guesswork as to how or by what agency decedent lost his life and the court erred in not directing a verdict for the defendant.

In many like cases which were much stronger for the plaintiff a peremptory instruction for the defendant has been approved or ordered, among which, in addition to the Caldwell case, *supra,* are Stewart v. N. C. & St. L. Ry. Co., 146 Ky. 127; Sutton's Admr. v. L. & N. Ry. Co., 168 Ky. 81, and Hearell, Admr. v. I. C. R. Co., 185 Ky. 41.

The court also erred in permitting plaintiff to introduce over defendant's objections evidence of the company's rules with reference to the engineer and fireman keeping a lookout, since defendant's liability to plaintiff depends not upon a breach of duty the employe owed the company but upon the breach of a duty due decedent, which must be determined by the principles of law and not by rules of the company for the guidance of its employes. L. & N. R. Co. v. Dyer, 152 Ky. 264.

Since for these reasons a reversal must be ordered other questions presented need not be and are not now decided.

Wherefore the judgment is reversed and the cause remanded for a new trial.