## Louisville Trust Co. v. Heimbuecher.

(Decided Nov. 14, 1933.)

(Rehearing Denied Jan. 23, 1934.)

RICHARD B. CRAWFORD and KENDRICK R. LEWIS for appellant.

WOODWARD, HAMILTON & HOBSON and WILBUR FIELDS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

The appellant, the Louisville Trust Company, on December 1, 1931, brought this suit against the appellee Lula Mae Heimbuecher, and her husband, William C. Heimbuecher, upon a promissory note on which it claimed there was a balance due of $2,100. The note, dated September 2, 1930, was for $2,200 and was payable 90 days after date with interest thereon at the rate of 6 per cent. per annum from maturity. It was credited with a payment of $100 as of November 30, 1931. On December 7, 1931, the plaintiff filed an amended and supplemental petition in which it was alleged that on November 30, 1931, the defendants, with a fraudulent intent to cheat, hinder, and delay their creditors and to defeat the collection of plaintiff's demand against them, conveyed to H. D. Odom and Septima Odom a certain house and lot in Jefferson county, Ky., and on the same day the Odoms conveyed the property to Margaret H. Guthrie and her husband, N. Rawlins Guthrie, Jr. It was further alleged that these conveyances were without consideration and were made for the purpose of assisting the defendants in defeating the plaintiff's claim against them. The Odoms and the Guthries were made defendants and in the prayer of its petition the plaintiff asked that the conveyances be declared null and void as to the plaintiff and that it be adjudged a lien on the property for the amount of its debt. It appears that the property so conveyed belonged to Lula Mae Heimbuecher and that Margaret H. Guthrie is her daughter.

On January 9, 1932, the defendants filed a joint answer which is in three paragraphs. Paragraph 1 was a traverse and in paragraph 2 it was averred that the property described in the petition was then of record by deed filed in the office of the clerk of the Jefferson county court in the name of the defendant Lula Mae Heimbuecher, in whose name it was of record when the note sued upon was executed and for several years prior thereto. In paragraph 3 it was averred that on September 2, 1930, when the note sued upon was executed, Lula Mae Heimbuecher was a married woman, the wife of the defendant W. C. Heimbuecher, and that she signed the note dated September 2, 1930, as surety only and that no part of the consideration for the note passed to her.

On the same day the answer was filed the plaintiff

moved the court to transfer the action to the equity docket. This motion was overruled as were the demurrers to paragraphs 1, 2, and 3 of the answer. A reply which traversed the allegations of paragraph 3 of the answer completed the issue, and, on the trial of the case before a jury, a verdict was returned for the defendant Lula Mae Heimbuecher. In the meantime, judgment had been taken against her husband, W. C. Heimbuecher.

There were four notes connected with the transaction out of which this litigation arises and the note sued upon is the last of three renewals. The original note for $2,750 was dated October 1, 1929, and was signed only by Lula Mae Heimbuecher. A renewal note signed by her was executed on February 1, 1930. The second renewal note was dated June 3, 1930, and the third renewal note was dated September 2, 1930. The second and third renewal notes were signed by W. C. Heimbuecher and Lula Mae Heimbuecher, W. C. Heimbuecher's name appearing first. The records of the Louisville Trust Company show that the original note and the first renewal note were signed by Lula Mae Heimbuecher alone. The original note was executed for the purpose of procuring funds with which to purchase 100 shares of stock of the Banco Kentucky. Company. The Banco Kentucky Company was a holding company and owned a large block of stock of the Louisville Trust Company.

The evidence for the defendant showed that on the day before the original note was executed, Mr. Morris Flexner, a neighbor of the Heimbuechers, informed W. C. Heimbuecher that he had bought some of the Banco Kentucky stock and that he thought it was a good purchase. He advised Heimbuecher to buy some of the stock. Heimbuecher was employed at the Kentucky Wagon Works and was unable to go to the bank during banking hours. He arranged with Flexner to take Mrs. Heimbuecher to the Louisville Trust Company for the purpose of purchasing 100 shares of stock of the Banco Kentucky Company for himself. On the following morning, Mrs. Heimbuecher went to the offices of the Louisville Trust Company with Mr. Flexner who introduced her to some of the employees of the bank. She arranged for the purchase of 100 shares of stock and signed the papers presented to her, including a note for

$2,750 due 90 days after date. She carried with her to the bank a certificate for 25 shares of Calumet and Hecla Consolidated Copper Company stock which was then worth $47 a share. This stock was owned by W. C. Heimbuecher and it was pledged as collateral on the note. The newly issued Banco Kentucky Company stock was also pledged as collateral on the note, but this stock was issued to Lula Mae Heimbuecher.

Mrs. Heimbuecher claims that she never saw the certificate for this stock and did not know it was issued in her name until she received a dividend check for $20 which was issued on January 2, 1930. She testified that her negotiations were entirely with Mr. Watkins, an officer of the Louisville Trust Company, and that she informed him that she was acting for her husband and that the stock was being purchased for him and should be issued in his name. The Banco Kentucky Company continued to declare dividends quarterly until October 1, 1930, and dividend checks payable to Mrs. Heimbuecher were mailed to her in April, July, and October, 1930. She testified that after she received the first dividend check, she went to the offices of the Louisville Trust Company and informed Mr. Watkins that the Banco Kentucky Company stock belonged to her husband but had been issued to her through mistake. Mr. Watkins promised to correct the mistake and gave her a renewal note and directed her to have her husband sign it. Mr. Watkins, though he was available as a witness, did not testify on the trial and there is no contradiction of Mrs. Heimbuecher's testimony which showed that she was acting throughout the transaction for her husband and that the appellant had knowledge that the stock was purchased for her husband and that he was the principal in the transaction. The only evidence from which an inference might be drawn that Mrs. Heimbuecher was the purchaser of the stock was the acceptance by her of the dividend checks. She testified, however, that the proceeds of these checks were deposited to the credit of her husband's account and that she notified appellant of the mistake, which it promised to correct. Her testimony is uncontradicted. The evidence further shows that she had never owned, bought, or sold any stocks, had no bank account in her own name, and was unfamiliar with the details of such transactions. The interest was paid on the original and re-

newal notes and payments were made from time to time on the principal until it was reduced to $2,000. All of these payments were made by W. C. Heimbuecher.

On this appeal the appellant relies upon a number of grounds for a reversal of the judgment, one of which is alleged misconduct of the court. When the jury was being selected and while the attorney for the bank was interrogating members of the panel and inquiring of them as to whether or not they owned or in the past had owned any stock in the Banco Kentucky Company, the presiding judge remarked, "If so, they have the sympathy of the court." It is insisted that this was highly prejudicial. The trial judge undoubtedly made the remark as a humorous aside and no doubt it was so understood by the jury. At the time of the trial, the stock of the Banco Kentucky Company was known to be worthless and we are unable to say, under the circumstances, that the remark was prejudicial. However, the bill of exceptions failed to show that any objection or exception was made or taken by the appellant at the time, and, in the absence of an objection and exception, the alleged error will be deemed to have been waived. Louisville & N. R. Co. v. Vaughan's Adm'r, 183 Ky. 829, 210 S. W. 938.

Counsel for appellant claims an objection was made to the remark and an exception taken; but the trial judge refused to approve the bill of exceptions showing that such objection was made, and the bill as approved by him is conclusive. Miller v. Tartar, 246 Ky. 52, 54 S. W. (2d) 606.

The trial court refused to permit counsel for appellant in his opening statement to refer to the alleged fraudulent transfer by Mrs. Heimbuecher of her house and lot or to offer any testimony bearing on that matter. It is urged that this transaction, having occurred at a date just before this suit was filed and after it had become known that the Banco Kentucky Company stock was worthless, tended to show that appellee knew she was liable on the note and that the evidence, if admitted, would have been sufficient to authorize the jury to draw such an inference. If evidence as to this transaction had been admitted, a wide field for the investigation of a collateral matter would have been opened. The offered evidence bore only on the motive actuating Mrs. Heimbuecher at the time she made the transfer.

At most it would permit the jury to indulge in only surmise and speculation. As said by the trial judge in his written opinion:

"The worst it can indicate against her is that she considered the possibility of the failure of her defense herein, whether true or false, and undertook to guard against such contingency. As well might it be contended that the conveyance of property by a defendant sued in tort is an admission by him of facts establishing his liability for the tort. An inquiry as to why defendant made the conveyance, whether through viciousness, ignorance, or under bad advice, and which was unmade within a few days thereafter, might, it seems to the Court, have involved much of testimony both ways on a wholly collateral and immaterial issue."

Alleged misconduct of defendant's counsel in his closing argument to the jury is also relied upon as a ground for reversal. During the course of his argument the attorney for the defendant made this statement:

"Gentlemen of the jury, you heard the plaintiff and its counsel down there gloating over the fact that they had forced this woman's husband into bankruptcy."

The plaintiff's counsel objected to the statement and moved the court to discharge the jury. The court overruled the motion to discharge the jury but admonished the jury to disregard the statement and defendant's attorney thereupon withdrew the statement. Defendant's attorney also said, during the course of his argument:

"Gentlemen of the jury, they sold this woman a lot of worthless Bunco stock."

The court overruled a motion to discharge the jury but instructed the jury to disregard the statement and stated to the jury that the question of value was not in the case and that the only issue was whether or not the defendant signed the note in question as surety for her husband. We think the court's action in promptly admonishing the jury to disregard each of the statements complained of cured the error, conceding for present purposes that the argument transgressed legitimate bounds. The attorney for the defendant did not persist

in the line of argument objected to, but in one instance promptly disavowed his own statement and withdrew it.

It is suggested that the court erred in overruling appellant's motion to transfer the case to the equity docket, but at the time the court acted on the motion, the pleadings showed that appellee had been reinvested with title to the property and there was no equitable issue to be determined.

On the whole case we have concluded that no error sufficiently prejudicial to authorize a reversal of the judgment has been pointed out and the judgment accordingly is affirmed.