Roy CURRENT et al., Appellants,

v.

COLUMBIA GAS OF KENTUCKY, INC.,
Appellee.

Court of Appeals of Kentucky.

June 26, 1964.

Rehearing Denied Nov. 13, 1964.

Miller, Griffin & Marks, Lexington, for appellants.

White & McCann, Winchester, H. Raymond Andrews, Jr., Charleston, W. Va., for appellee.

DAVIS, Commissioner.

The appellants sued appellee in the Clark Circuit Court seeking damages for personal injuries allegedly induced by carbon monoxide gas. The damage claims are predicated on the averred negligence of appellee in cutting gas into improperly vented appliances used by appellants. A jury was unable to agree upon a verdict, and was discharged. Thereupon the trial court sustained appellee's motion for judgment as if its prior motion for directed verdict had been sustained. CR 50.02.

Appellants present several grounds upon which reversal is urged, which may be summarized as: (1) There was sufficient evidence to warrant submission of the issues to the jury; (2) errors were committed in refusing evidence offered by appellants and in admitting evidence in behalf of appellee; and (3) improper instructions were given and proper instructions were refused.

The appellants are James and Elsie Mae Current, husband and wife, and their five minor children. The entire Current family moved into a rented residence in Winchester on October 28, 1960. The home contained a living room, kitchen, dining room, two bedrooms, a bath and a basement. The first floor living area of the residence contains 6,736 cubic feet; the basement area has 7,730 cubic feet. Since the house had been vacant, the gas had been cut off. Appellee inspected the premises and cut the gas on.

Three gas appliances were used in the Current home. There was a 65,000 BTU space heater, located in front of a fireplace in the living room, a double oven stove, having four burners on top, located in the kitchen, and a water heater in the basement, identified in the record as a "side arm" type.

There was no vent on the kitchen stove, but all parties concede that it is usual practice for such an appliance to be utilized without venting. The side arm water heater was vented by a pipe run from the basement, up an outside wall of the house; this vent had its outlet below the roof line of the house, near a rear bedroom window. There is sharp dispute in the evidence whether the space heater in the living room was vented.

An employee of appellee cut the gas into the house and lit the pilot light on the space heater. He testified that at the time he cut the gas into the house the space heater was vented. He acknowledged that his instructions from his employer as well as his experience caused his knowledge that it is unsafe to burn gas in an appliance of 65,000 BTU capacity unless the appliance is properly vented. The same witness said that his inspection of the space heater, when he cut in the gas, revealed to him that it was burning normally and was not dirty.

It was also shown by the witness that he inspected the side arm heater, and observed that a vent pipe led from it through an outside wall. He did not inspect that vent pipe to determine its ultimate point of outlet, but testified that his company's requirement, and good practice, directed that the outlet on such a vent should be at least two feet above the roof line of the house.

The residence in which appellants resided was of concrete block construction, and was porous. On the night of February 2 and in the early morning hours of February 3, 1961, the weather warmed somewhat and a freezing rain and sleet occurred. Appellants reason that these circumstances may have somewhat sealed the otherwise porous walls.

About midnight on February 2 the appellants became ill; they called a doctor. When he arrived at about 1:00 a. m. some of the family were ill and vomiting. The physician concluded they were suffering a mild gastric upset. Although he noted the house seemed abnormally warm, especially when he was standing, he did not detect any gas odor. It is shown, without contradiction, that carbon monoxide is colorless and odorless.

A fellow employee of James Current became apprehensive when the latter did not report for work at the normal time. The coworker went to the Current home, but received no response to her knocks upon the door. Moans were heard from within the house, but there was no answer to the repeated calls of the witness. Upon entering the house this witness found Mrs. Current on the floor in the living room; some of the children were on the two couches in the living room—James Current was "half on the bed" in one of the back bedrooms. All were unconscious. Efforts to arouse the parents failed. The witness obtained aid from the police department and the emergency squad of the fire department.

The assistant fire chief recounted that all of the appellants appeared unconscious when he arrived. Some of them even seemed to be not breathing; he supervised administration of oxygen and resuscitation to the victims who showed no sign of breathing. He remembered that an appearance of soot, or some settlement, was observed around the mouths and nostrils of at least three of them. He did not observe Mrs. Current's condition in this respect.

There is substantive evidence from competent doctors that the appellants sustained injury from carbon monoxide poisoning. The record reflects substantial injuries to some of the appellants, but that matter is not now involved.

For appellants, several witnesses testified that the space heater was not vented when it was put in operation on October 28th, and that it was never vented prior to the claimed carbon monoxide poisoning of the appellants. There is no question that a submittable jury issue was created as to whether it was vented; the question is whether the evidence warranted submission to the jury, even if the space heater was not vented.

. Appellee presented. Professor Warren A. Cook, who qualified as ·a skilled expert as ·to the effects of gases in the air upon humans. The witness conducted tests of the space heater (although appellants challenged the integrity of the heater when tested). Professor Cook testified that if the space heater had been vented, it was his judgment that it would not have been the origin of sufficient carbon monoxide to visibly adversely affect humans. He said that when he tested the space heater, after it had been removed to Pittsburgh, Pennsylvania, it burned with a blue flame. The witness said such flame is normal when the appliance is operating properly. He pointed out that if the appliance became clogged with lint or other foreign material, the flame would tend to become yellow and that the burner would smoke. Under those conditions, if the heater was vented, it was his opinion that the carbon monoxide would be carried off through the vent sufficiently to forestall injury. However, he testified that if the heater's flame smoked extensively and the heater was unvented, enough carbon monoxide would be introduced into the house to cause human injury and unconsciousness.

Moreover, the same expert pointed out that an unvented heater would have greater tendency to become clogged than one properly vented. He also observed that the clogging process normally would be a relatively progressive one, culminating in a greatly increased degree of clogging at a "particular time." The "particular time" to which he referred was described as being when accumulated deposits of material dropped down to further clog passageways.

The evidence showed that appellants had soot on their hands and faces when they were admitted to the hospital; at least three of them had quantities of soot about their mouths and nostrils. In response to questioning by appellee's counsel whether the instant space heater could have produced that result, Professor Cook· gave this significant answer:

· · "If we contemplate a good adjustment meaning the whole operation was satisfactory, we would not think that soot would be produced, but if any of the several elements might have been present which would ·cause smoking of the stove, and I believe I have enumerated these as closing off the air supply or increasing building up of soot in the passages, then smoke, sooty smoke would come out of the stove and would enter the living areas and would be expected to cause that condition."

 It is basic that a plaintiff is entitled to the most favorable inferences and construction attributable to the evidence, upon consideration of a motion for directed verdict against him; if such evidence, so regarded, substantially tends to support the cause of action, the verdict should not be directed against him. Johnson v. Vaughn, Ky., 370 S.W.2d 591; 18 Ky.Digest, Trials, In our view, the evidence we have discussed amply warrants a factual issue whether the alleged injuries of the appellants were proximately caused by negligence of appellee in cutting gas into an improperly vented space heater. Therefore, it was error to grant judgment as if the motion for directed verdict had been sustained.

Since there may be another trial of the case, we discuss other pertinent points:

Appellants sought to introduce in evidence the rules of appellee relating to standards of care as to inspection and venting of gas appliances. There is an apparent conflict in previous decisions of this court on the point at issue. In 50 A.L.R. 2d 16, et seq., it is said that the weight of authority supports the doctrine of admissibility of such rules, subject to certain conditions and limitations set out in the work cited.

Two decisions of this court are there cited as supporting the majority rule of admissibility: Southern R. Co. v. Adkins' Adm'r, 133 Ky. 219, 117 .S.W. 321, 119 S.

W. 820, and Louisville & N. R. Co. v. Gregory, 279 Ky. 295, 130 S.W.2d 745.

In the same annotation five Kentucky cases are cited as opposed to the admissibility rule: Louisville R. Co. v. Gaugh, 133 Ky. 467, 118 S.W. 276; Southern R. Co. v. Stewart, 141 Ky. 270, 132 S.W. 435; Louisville & N. R. Co. v. Dyer, 152 Ky. 264, 153 S.W. 194, 48 L.R.A.,N.S., 816; Louisville & N. R. Co. v. Vaughan's Admr. 183 Ky. 829, 210 S.W. 938, and Louisville & N. R. Co. v. Stidham's Adm'x, 187 Ky. 139, 218 S.W. 460.

Cogent reasons may be advanced for either position. Against admissibility it is said that a tendency would exist whereby companies would forego safety rules, thus subjecting all to increased hazards; in some instances a higher standard would be imposed by the regulations than by law; that if a *lesser* standard is imposed by regulation than by law, an improper result might ensue. Doubtless other arguments are advanced.

On the other hand, it is suggested that a jury has no standard whereby to measure the conduct of a highly specialized business. It may be questioned that a jury of laymen can intelligibly gauge the degree of care usually exercised by an ordinarily prudent man when that mythical actor is engaged in conduct utterly beyond the ken of the juror. For example, which of us could know what an ordinarily prudent astronaut would do in a space flight—or how should we evaluate the conduct of an ordinarily prudent man on the moon? It is our conclusion such rules should be admitted in cases posing the standard of care required in activities not within the general realm of common experience.

■ In the instant case it is shown that the rules were effective before and at the pertinent periods in the case; the rules were known to the appellee's employees, and, in substance, the employees testified that the same conduct prescribed by the rules constitutes safe practice. There is

no showing that any requirement of the rules exceeds the standard of ordinary care under similar circumstances. Clearly the rules related to the situation at bar, and were evolved for safety purposes. Under these circumstances we decide the instant rules should have been admitted. To the extent, and only to the extent, that the contra Kentucky cases are inconsistent with this rule, they are overruled.

■ Appellants complain of admission of the results of experiments with the space heater and hot water heater. It is said that neither of the appliances was shown to be in the same condition when tested as when the alleged injuries occurred. We have examined the evidence and conclude that the matter of the relative conditions of the appliances at the time of test and time of accident was made plain to the jury. It was not claimed for the tests that they showed the operating efficiency of the appliances as they were at the time of the accident. Rather, it was shown what results were found under various conditions. As we have shown, it was the operation of the space heater under one condition which, in our minds, entitled appellants to go to the jury.

■ Appellants' charge of error as to the rejection of certain rebuttal testimony of Dr. Sam Hite appears to be without merit. This is so because a reading of the transcript fails to reflect that any material portion of Dr. Hite's evidence was excluded. Under the circumstances all of Dr. Hite's evidence was proper rebuttal, as it sought to attack the verity of Professor Cook's evidence.

■ Appellants were permitted to prove that Professor Cook was being compensated by appellee incident to his expert testimony. They urge that they should have been permitted to show the precise rate of compensation. We do not agree. It is true, as conceded by the parties, that it is proper to show that the witness is being compensated. However, we feel that,

in the absence of unusual circumstances, the better rule is to limit the showing to the fact that payment is being made. To permit details of the compensation injects collateral matter into the trial. It is generally recognized that inquiries of this type rest largely within the discretion of the trial court, and absent a showing of abuse of discretion, the limitation of such questioning will not constitute reversible error. Here there is no showing that the compensation was in any way conditioned upon the outcome of the litigation. There was no abuse of discretion. Parsley v. Com., Ky., 306 S.W.2d 284; 33 A.L.R.2d 1171; 58 Am.Jur., Witnesses, § 844.

Appellants complain that the instructions given placed undue emphasis on one phase of the defense, and created an ambiguity. Related to this ground urged for reversal is appellants' contention that an instruction offered for them should have been given, but was refused. There was evidence that the condition of the venting of the water heater could have been a contributing factor to the danger of injury from the space heater, if unvented; language should have been included in the instruction so indicating. Upon another trial, the following instruction will be given, if the evidence is substantially the same:

If you believe from the evidence that at the time the representatives of the defendant, Columbia Gas Company, cut gas into the house and appliances at the residence of the plaintiffs, the gas heater in the living room was unvented, and such condition was known to the defendant's representatives, or should, in the exercise of ordinary care have been known to them, and if you further believe the failure to vent the hot water heater at least two feet above the roof line of the residence created a dangerous condition, of which the defendant's representatives knew, or should have known in the exercise of ordinary care, and if you further believe that as the direct and proximate result of the said condition of the gas heater in the living room, solely, or in combination with the condition of the hot water heater the plaintiffs were injured and damaged, then the law is for the plaintiffs, and you will so find; but unless you so believe, or unless you find under other instructions, the law is for the defendant and you will so find.

The court gave as instruction 2 the following:

"If you believe from the evidence that defendant caused a condition to exist which was not dangerous but, which merely made it possible for the injuries to occur to plaintiffs, through some independent or unrelated cause, then you should find for defendant."

It is argued that the giving of the latter instruction overemphasizes the defense and creates ambiguity. We agree. It is our opinion that the first instruction, when read in light of the usual proximate cause instruction, which was properly submitted, fairly presents the issues, so that the giving of instruction 2, just quoted, is not necessary. Upon another trial, it will be omitted.

Finally, it is contended that it was error to instruct that appellee's duty was to exercise ordinary care. It is urged that the handler of gas should be charged with the "highest degree of care." In support of this proposition appellants cite Darlington v. Owen County Rural Electric C. C., Ky., 299 S.W.2d 599, and Vaught's Adm'x v. Kentucky Utilities Co., Ky., 296 S.W.2d 459. These cases deal with purveyors of electricity. Also cited is Rowan v. Western Ky. Gas Co., 82 F.Supp. 591 (D.C.Ky.) in which Judge Swinford commented in part: "The 'ordinary care' required is not the care of an ordinary person for the average person knows nothing of how to handle gas. Ordinary care in this instance means ordinary care by people learned in the handling gas."

The trial court defined "ordinary care" as applied to appellee as meaning that degree of care that an ordinarily prudent gas company, learned in the handling of gas, would exercise under like or similar circumstances. We feel that this instruction, considered in light of the rules and regulations of the company, and along with other evidence of the prevailing safety practices in the trade, amply submits the issue.

The judgment is reversed for proceedings consistent with the opinion.